## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAFFAELE FERRAIORI, Individually and On Behalf of All Others Similarly Situated,<br><br>                             Plaintiff,<br><br>      v.<br><br>TRITERRAS, INC. F/K/A NETFIN ACQUISITION CORP., SRINIVAS KONERU, and MARAT ROSENBERG,<br><br>                         Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Raffaele Ferraiori ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Triterras, Inc. ("Triterras" or the "Company") f/k/a Netfin Acquisition Corp. ("Netfin") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Triterras; and (c) review of other publicly available information concerning Triterras.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Triterras securities between August 20, 2020 and December 16, 2020, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Triterras is a fintech company focused on trade and trade finance. It operates Kratos, a commodity trading and trade finance platform that connects commodity traders to trade and source capital from lenders directly online.

3.      Triterras formed via merger of Netfin and Triterras Fintech Pte. Ltd. ("Triterras Fintech"), which closed on November 11, 2020 (the "Merger"). Netfin was a special purpose acquisition company incorporated for the purpose of entering into a merger, share exchange, asset acquisition, share purchase, recapitalization, reorganization or other similar business combination with one or more businesses or entities. Netfin's prospective target business was not limited to any particular industry or geographic region.

4.       Rhodium Resources Pte. Ltd. ("Rhodium") is a commodity trading business headquartered in Singapore. It is controlled by Srinivas Koneru, the Company's Chief Executive Officer ("CEO"). Rhodium enabled the launch of the Kratos platform, and substantially all of the Company's users were referred to it by Rhodium. As a result, the two entities have entered into an origination agreement to incentivize Rhodium to continue to refer its commodity trading customers to Kratos, in exchange for fixed payments to Rhodium at the time a referred customer meets total transaction volume requirements for a given period.

5.       On December 17, 2020, Triterras stated that Rhodium was seeking a moratorium to shield itself from creditor actions while it planned a restructuring of its debts and continue its business as a going concern.

6.       On this news, the Company's share price fell $4.11, or 31%, to close at $9.09 per share on December 17, 2020, on unusually heavy trading volume. The Company's warrant price fell $1.09, or 35%, to close at $2.01 per warrant on December 17, 2020, on unusually heavy trading volume.

7.       Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) the extent to which Company's revenue growth relied on Triterras' relationship with Rhodium to refer users to the Kratos platform; (2) that Rhodium faced significant financial liabilities that jeopardized its ability to continue as a going concern; (3) that, as a result, Rhodium was likely to refer fewer users to the Company's Kratos platform; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.     Plaintiff Raffaele Ferraiori, as set forth in the accompanying certification, incorporated by reference herein, purchased Triterras securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

CLASS ACTION COMPLAINT

14.     Defendant Triterras is incorporated under the laws of the Cayman Islands with its principal executive offices located in Singapore. Triterras' common shares trade on the NASDAQ exchange under the symbol "TRIT" and its warrants trade under the symbol "TRITW." Prior to the Merger, the Company's Class A ordinary shares and redeemable warrants traded under the symbols "NFIN" and "NFINW," respectively.

15.     Defendant Srinivas Koneru ("Koneru") is the founder of Triterras Fintech and was its Chief Executive Officer ("CEO") until the Merger closed, when he became CEO of Triterras. He is also the founder of Rhodium.

16.     Defendant Marat Rosenberg ("Rosenberg") is the founder of Netfin and was President of Netfin until the Merger closed.

17.     Defendants Koneru and Rosenberg (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Triterras is a fintech company focused on trade and trade finance. It operates Kratos, a commodity trading and trade finance platform that connects commodity traders to trade and source capital from lenders directly online.

19.     Triterras formed via merger of Netfin and Triterras Fintech, which closed on November 11, 2020. Netfin was a special purpose acquisition company incorporated for the purpose of entering into a merger, share exchange, asset acquisition, share purchase, recapitalization, reorganization or other similar business combination with one or more businesses or entities. Netfin's prospective target business was not limited to any particular industry or geographic region.

20.     Rhodium is a commodity trading business headquartered in Singapore. It is controlled by Koneru, the Company's CEO. Rhodium enabled the launch of the Kratos platform, and substantially all of the Company's users were referred to it by Rhodium. As a result, the two entities have entered into an origination agreement to incentivize Rhodium to continue to refer its commodity trading customers to Kratos, in exchange for fixed payments to Rhodium at the time a referred customer meets total transaction volume requirements for a given period.

### Materially False and Misleading
### Statements Issued During the Class Period

21.     The Class Period begins on August 20, 2020. On that day, Netfin and Triterras Fintech hosted a conference call to discuss the Merger. During the call, defendants Rosenberg and Koneru discussed that the parties had "decided not to do a combination with Triterras Holdings, which included its Rhodium business, which is a commodity trading business." Defendant Rosenberg stated:

So, while we were initially tempted to include Rhodium, given that it did have positive scale, there were two key developments that ultimately made us change the approach and address the above concerns. The first was that the Kratos digital platform grew significantly faster than anyone expected. This is evidenced by the press release on July 6th that showed that the company did $2.9 billion of transaction volume through the first four months of the company's 2020 fiscal year, which ran from March of 2020 through June of 2020, while the projection for the entire year was $7.8 billion. This put the company well ahead of projections without even factoring a ramp, which by the way is also pretty significant as the average monthly volume in first four months is 70% and higher than it was in 2019.

The second major development that happened is that Rhodium, while it has a good relationship and a strategic advantage from having a partnership with a company like Rhodium, which initially seeded the platform – and platforms are very difficult to get started off the ground and you need a critical mass of users day one, otherwise it is not a platform, it is not, the fact that nobody wants to be on it. But Kratos, which – initially, what we call is the big bang at the initial start point – started out as 100% in the first trade, today only accounts for 11% of the revenue that is coming to the platform. There has been a tremendous network effect and movement away from Kratos because this has been very valuable. And for the entire year, it is only projected to be as high as 15% of the revenue contribution.

***So this is a very well-distributed platform and there was no reliance on Rhodium***. So given this fast growth, the public company scale they had, including[?] independence from Rhodium or any one customer, we just saw a tremendous opportunity to address all of the concerns I started with and create really a fast-growing pure fintech 100% revenue-based platform business with no balance sheet exposure. ***And we believe now that we have a much more valuable asset that is priced even better than was presented in the initial LOI with Rhodium is inclusion.***

22.     During the same call, defendant Koneru stated, in relevant part:

We do want to point out that although the Rhodium volume kick-started the platform, we have seen a tremendous rate of adoption by independent third parties. Our total revenue contribution from all of the 11 Rhodium subsidiaries combined is expected to be only 15% of our 2020 revenues, and lower in later years. Thinking back to June 2019, Rhodium was 100% of our business. So this is a testament to how quickly the platform has been adopted by third parties.

23.     On August 28, 2020, the Company filed its registration statement and preliminary proxy statement/prospectus on Form F-4 with the SEC. Therein, the Company stated its operations "significantly depends on [its] credibility and reputation, and to some extent the reputation and

credibility of Rhodium," which could be damaged by, among other things, "adverse litigation judgments or regulatory decisions." The Company also stated:

> ***Our business has substantially depended on our relationship with Rhodium Resources Pte. Ltd., a physical commodity trader, to initially deliver customers and drive traffic for our platform, and any future changes in this relationship may adversely affect our business, financial condition and results of operations.***
>
> Substantially all of the users of our Kratos platform during the year ended February 29, 2020 were referred to the platform by Rhodium Resources Pte. Ltd. and its subsidiaries ("Rhodium"), an entity controlled by Mr. Srinivas Koneru. While we are working on expanding the user base of the platform to become more independent, we rely on Rhodium to both use our platform for their transactions and to promote the use of our platform to their trading counterparties and contacts in the trade finance, credit insurance and logistics markets. There can be no assurance that Rhodium will continue to support our platform in this way or that we will be able to grow the user base of the platform as quickly, or at all, on an independent basis. Any adverse change in Rhodium's business or our relationship with Rhodium may adversely affect our business, financial condition and results of operations.

24.     In the same proxy statement, the Company stated that Netfin's Board considered certain factors before approving the Merger, including:

> ***Public market-ready scale, profitability and favorable user distribution and network effect.***     Netfin believes Kratos has reached critical mass as a highly valuable tool for commodity traders and financiers, which in turn is driving significant revenue, EBITDA* and net income growth, independently of Rhodium, its largest customer that helped kickstart the platform. This year, Rhodium is anticipated to attribute less than 15% of Fintech's net revenue, and this decrease is expected to continue. For its fiscal year 2021, the Projections (as defined below) forecast US$17 billion in transaction volume, US$122.7 million net revenue, $84.3 million EBITDA, and US$71.4 million net income. The pro forma market cap is expected to be in excess of US$850 million at estimated trust value per share at closing (US$10.17), assuming no redemptions in connection with the Business Combination.

25.     On October 26, 2020, the Company filed an amendment to its Registration Statement and made substantially similar statements as those identified in the preliminary proxy statement. Regarding its related party transactions with Rhodium, the Company stated:

> As at February 29, 2020 and February 28, 2019 Fintech had advances due from Rhodium and Triterras Asia in the amount of US$5,361,593 and US$3,195,275,

respectively, relating to Fintech's working capital requirement. As of the date of this proxy statement/prospectus these advances due from Rhodium and Triterras Asia have been partially repaid and amount to US$2,551,017 million. Such advances were unsecured, non-interest bearing and repayable on demand. The advances are expected to be fully repaid by February 28, 2021. As at February 28, 2019, Fintech also owed Mr. Koneru personally US$153,924 for expenses incurred on its behalf in connection with incorporation and initial operations.

Triterras Asia accounted for US$4,504,413, or 26.7% of Fintech's revenue for the year ended February 29, 2020, primarily relating to platform fees where Rhodium initiated the commodity trade with its counterparty. While Fintech is working on expanding the user base of the platform to become more independent, ***Fintech has relied on Rhodium to promote the use of its platform to their trading counterparties and contacts in the trade finance, credit insurance and logistics markets.*** Substantially all of the users of Fintech's Kratos platform during the year ended February 29, 2020 were referred to the platform by Rhodium. As a result, Fintech and Rhodium have determined it would be in each party's interest to enter into an origination agreement (the "Origination Agreement") to incentivize Rhodium to continue to refer its commodity trading customers to the Kratos platform, consistent with Rhodium's past practice. ***The Origination Agreement provides for fixed payments to Rhodium at the time a referred customer meets total transaction volume requirements over a required period. Fintech currently expects that approximately US$1.7 million will be payable to Rhodium during the year ended February 28, 2021 due to Rhodium's referrals of commodity trading customers.*** The Origination Agreement also provides for Rhodium to introduce lenders, insurers and shippers to the Kratos platform, with fee for such introductions to be agreed between Rhodium and Fintech separately. The Origination Agreement was entered into by Fintech and Rhodium on an arm's length basis, on the same terms as similar agreements entered into by Fintech with third parties. The Origination Agreement is terminable on one month's notice by either party.

26.    On October 29, 2020, the Company filed its proxy statement soliciting shareholder approval of the Merger at a meeting to be held on November 10, 2020. The proxy statement made substantially similar statements as those identified in the preliminary proxy statement and subsequent amendments.

27.    On November 16, 2020, the Company filed a shell company report on Form 20-F with the SEC to report its financial results following the Merger. It incorporated by reference the financial statements in the registration statement filed on October 26, 2020.

28.    The above statements identified in ¶¶ 21-27 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose to investors: (1) the extent to which Company's revenue growth relied on Triterras' relationship with Rhodium to refer users to the Kratos platform; (2) that Rhodium faced significant financial liabilities that jeopardized its ability to continue as a going concern; (3) that, as a result, Rhodium was likely to refer fewer users to the Company's Kratos platform; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

29.    On December 17, 2020, Triterras stated that Rhodium was seeking a moratorium to shield itself from creditor actions while it planned a restructuring of its debts and continue its business as a going concern. Specifically, according to a Form 6-K filed with the SEC, the Company stated:

> Triterras, Inc. (the "Company") was informed today that a statutory demand for payment from Antanium Resources Pte. Ltd., the company formerly known as Rhodium Resources Pte. Ltd. ("Rhodium") was filed by a creditor of Rhodium on December 1, 2020 pursuant to the Singapore Insolvency, Restructuring and Dissolution Act (the "Act"). ***Pursuant to Singapore law, Rhodium must respond to this statutory demand within 21 days or a bankruptcy application could be filed by the creditor against Rhodium.*** Rhodium has informed the Company that its traditional commodity trading business has been adversely impacted by the COVID-19 pandemic and the lack of availability of trade finance funding for commodity trades involving SMEs. ***Rhodium has informed the Company that today (December 17, 2020, Singapore time) it has sought a moratorium order from a Singapore court which will shield Rhodium from creditor actions while Rhodium prepares a scheme of arrangement pursuant to the Act to restructure its debts and continue its business as a going concern.*** The Company understands that Rhodium currently expects a scheme of arrangement to be acceptable to the required majority of each class of its creditors and that Rhodium will continue as a client of the Company. The Company looks forward to continuing its productive relationship with Rhodium in the medium term. ***Rhodium and the Company are***

*each under the control of Mr. Srinivas Koneru, the Company's founder, Executive Chairman and Chief Executive Officer.*

While the Company's relationship with Rhodium was instrumental to the initial launch of the Company's Kratos platform and the platform's attractiveness to the commodities trading and trade financings communities, the Company has become less dependent on Rhodium's business as the platform achieves a growing mass of users, other than Rhodium and its subsidiaries. For example, while substantially all of the users of the Kratos platform during the year ended February 29, 2020 were referred to the platform by Rhodium and its subsidiaries who accounted for 26.5% of the Company's revenues. As the platform has continued to add additional users, revenues from Rhodium and its subsidiaries as a percentage of total revenues decreased to 15.5% for the six months ended August 31, 2020. Based on available preliminary operational information, the Company estimates that Rhodium and its subsidiaries have accounted for less than 10% of the Company's revenues for the period since August 31, 2020, while at the same time, the Company's total transaction volume and revenues from other users have continued to grow in line with the Company's targets provided to the public in connection with the business combination.

The Company expects that (a) the proportion of transaction volume and revenues related to Rhodium will continue to decline, in line with the Company's plans to diversify the user base beyond Rhodium, (b) that Rhodium or its affiliates will honor all of its other obligations to the Company, including payment of accounts receivable and repayment of approximately US$1.7 million of outstanding advances due from related parties as of December 1, 2020, and *(c) user referrals payable to Rhodium under the origination agreement entered into with Rhodium will be lower than previously expected.*

The Company expects it will meet its previously issued revenue and net income guidance for the fiscal year 2020 ending February 28, 2021 and expects to provide a business update for the three months ending November 30, 2020 on January 5, 2021.

30.    On this news, the Company's share price fell $4.11, or 31%, to close at $9.09 per share on December 17, 2020, on unusually heavy trading volume. The Company's warrant price fell $1.09, or 35%, to close at $2.01 per warrant on December 17, 2020, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

31.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased

or otherwise acquired Triterras securities between August 20, 2020 and December 16, 2020, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Triterras' shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Triterras shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Triterras or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Triterras; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

36.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

37.    The market for Triterras' securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Triterras' securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Triterras' securities relying upon the integrity of the market price of the Company's securities and market information relating to Triterras, and have been damaged thereby.

38.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Triterras' securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or

misleading because they failed to disclose material adverse information and/or misrepresented the truth about Triterras' business, operations, and prospects as alleged herein.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Triterras' financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

40.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41.     During the Class Period, Plaintiff and the Class purchased Triterras' securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

42.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were

materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Triterras, their control over, and/or receipt and/or modification of Triterras' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Triterras, participated in the fraudulent scheme alleged herein.

### APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

43. The market for Triterras' securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Triterras' securities traded at artificially inflated prices during the Class Period. On December 4, 2020, the Company's share price closed at a Class Period high of $14.42 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Triterras' securities and market information relating to Triterras, and have been damaged thereby.

44. During the Class Period, the artificial inflation of Triterras' shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Triterras' business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Triterras and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially

inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45.     At all relevant times, the market for Triterras' securities was an efficient market for the following reasons, among others:

(a)     Triterras shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Triterras filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Triterras regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Triterras was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

46.     As a result of the foregoing, the market for Triterras' securities promptly digested current information regarding Triterras from all publicly available sources and reflected such information in Triterras' share price.  Under these circumstances, all purchasers of Triterras' securities during the Class Period suffered similar injury through their purchase of Triterras' securities at artificially inflated prices and a presumption of reliance applies.

47.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

48.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Triterras who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

49.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Triterras' securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

51.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Triterras' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Triterras' financial well-being and prospects, as specified herein.

53.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course

of conduct as alleged herein in an effort to assure investors of Triterras' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Triterras and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

54.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

55.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

for the purpose and effect of concealing Triterras' financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Triterras' securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Triterras' securities during the Class Period at artificially high prices and were damaged thereby.

57.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Triterras was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Triterras securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**

**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

60.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

61.     Individual Defendants acted as controlling persons of Triterras within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the

particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Triterras and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 21, 2020

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

and

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff Raffaele Ferraiori*

## SWORN CERTIFICATION OF PLAINTIFF

Triterras, Inc., **SECURITIES LITIGATION**

I,     Raffaele Ferraiori                    , certify:

1.  I have reviewed the complaint and authorized its filing and/or adopted its allegations.

2.  I did not purchase Triterras, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in Triterras, Inc., during the class period set forth in the Complaint are as follows:

    See Attached Transactions

5.  I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

    ☐ Check here if you are a current employee or former employee of the defendant Company.

    I declare under penalty of perjury that the foregoing are true and correct statements.

12/18/2020

Dated: _____

Raffaele Ferraiori

**Raffaele Ferraiori's Transactions in Triterras, Inc. Warrants (TRITW)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 12/7/2020 | Bought | 590 | $3.27 |