UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

RAFFAELE FERRAIORI, individually
and on behalf of all others
similarly situated,

                Plaintiff,

        -against-               20 Civ. 10795(CS)

TRITERRAS INC., et al.,

                Defendants.

------------------------------------x

                     United States Courthouse
                     White Plains, New York

                     April 15, 2021

              THE HONORABLE CATHY SEIBEL,
                  District Court Judge

GLANCY PRONGAY & MURRAY LLP
        Attorneys for Plaintiff
        1925 Century Park East, Suite 2100
        Los Angeles, CA 90067
BY:  CHARLES H. LINEHAN

ROBBINS GELLER RUDMAN & DOWD LLP
        Attorneys for JOHN A. ERLANDSON
        5 South Service Road
        Melville, New York 11747
BY:  DAVID A. ROSENFELD
     JENNIFER CARINGAL

          Angela O'Donnell - Official Court Reporter
                  914-390-4025

THE DEPUTY CLERK:  Good afternoon, Judge.  This matter is -- forgive me if I'm mispronouncing this -- but Ferraiori v Triterras.

We have on the line representing plaintiff Mr. Charles Linehan, and we have representing Movant, John A. Erlandson, Mr. David Rosenfeld, and Ms. Jennifer Caringal.  And our court reporter, Angela, is on, and Josh is on.

THE COURT:  All right.  Good afternoon everyone.  Let me remind the lawyers, if you say anything, the first word out of your mouth should be your last name.  Please do not say, this is Charles Monahan for plaintiffs.  Just say Monahan. Don't worry about sounding impolite.  You'll be doing me, and more importantly, the court reporter, a big favor by saying your last name first.  And if you don't, you're going to get interrupted, and of course we don't want that.

I guess my first question is for plaintiff's counsel. How do you pronounce the plaintiff's name?

MR. FERRAIORI:  I believe it's Ferraiori.

THE COURT:  Well, you already failed to say your name when you spoke.  That wasn't a test.  I do want to know how to say Ferraiori.  All right.  But my request you say your last name first applies even if I'm directing a question right to you or even if you think it's apparent from the context who is speaking.  Just makes life much easier for the court reporter and for me.

All right, does either Mr. Ferraiori or Mr. Erlandson have anything to add that's not covered by the motion papers?

All right, I'll take that as a no.

MR. LINEHAN:  Actually, I do, your Honor.

THE COURT:  Linehan, sorry.  I'm pronouncing your name wrong, I thought it was Monahan.  It's Linehan.  Sorry about that.

MR. LINEHAN:  Linehan.  I could address some of the arguments the raised by Mr. Erlandson in his reply brief, which I haven't had a chance to yet, but I'll ask if that would be helpful to the Court.

THE COURT:  Anything you want to tell me that isn't covered by the papers, I'll listen to.

MR. LINEHAN:  Sure.  Let me just point out that the authority cited by Mr. Erlandson directly states that it is within the discretion of district court to appoint co-lead plaintiffs, if the Court chooses.  This is in *Bodri versus GoPro*.

The other issue I'd like to point out is that appointing a plaintiff with only stock purchases will, with 100 percent certainty, lead to a standing challenge with respect to the claims on behalf of the warrant holders, and this, too, is supported by the authority cited by Mr. Erlandson.  This is the *Hevesi v Citigroup* case, that case also cites *In re Initial Public Offerings*, which explains the

same thing.

With respect to the appointment of lead plaintiff, the issue is what plaintiff or group of plaintiffs would be most adequate in representing the interests of the class.  I won't go over the authority I cited in my opposition brief, but *Oxford Health Plans* speak to this that what is most adequate for the class is that all securities that are at issue for the class members, it would be ideal and be most adequate if they were represented.

And there's actually a case cited by Mr. Erlandson which he claims supports his side but directly supports the opposite.  So in *Cendant*, which is cited by Mr. Erlandson, the Court declined to appoint co-lead plaintiffs and instead appointed a group of institutional investors that had applied to be lead plaintiff, and the Court explicitly reasoned that the reason for doing that is because that group of institutional investors purchased every type of security.  So even in the cases cited by Mr. Erlandson there is support for the appointment of co-lead plaintiffs where failing to do so would leave certain class of securities outside of being represented by a lead plaintiff.

So I won't be more long-winded than that, but I did want to address those points.  Thank you.

THE COURT:  All right, thank you.

Do you want to respond for Mr. Erlandson?

MR. ROSENFELD:  Your Honor, with your Honor's permission, I would like to ask for Ms. Caringal to be allowed to speak.  She has not filed for *pro hac*.  She's in the process of getting her papers, but I would like her to speak on behalf of Mr. Erlandson with your Honor's permission.

THE COURT:  That's fine.  I'll admit her *pro hac* for purposes of today.

MR. ROSENFELD:  Thank you.

MS. CARINGAL:  Thank you, your Honor.  Good afternoon.  I'll just briefly address a couple of the points that Mr. Linehan raised.

First, there's nothing in the PSLRA that indicates that the lead plaintiff must have standing on every available cause of action.  While it's true that the Court does have discretion to appoint multiple or co-lead plaintiffs, it is not mandated by the PSLRA.

The issue that Mr. Linehan raises about standing, that is not an issue because the lead plaintiff has the power to name a class representative or another named plaintiff at the appropriate time down the line.

In the *Oxford* case that Mr. Linehan cites, I believe the Court found that there was an actual conflict of interest there and that is why they decided to appoint a co-lead plaintiff.  There is no actual conflict of interest here.  Mr. Ferraiori has not identified any.

I think Mr. Linehan cited the *Cendant* case.  That was a massive, multibillion dollar case that dealt with institutional investors.  The Court also did find that there was a conflict of interest that existed there and appointed additional co-lead plaintiffs to address that issue.

THE COURT:  All right.  Thank you both.  Let me tell you how I come out.

First of all, by way of background, the motions I'm addressing are the motions of plaintiff Raffaele Ferraiori and by movant John Erlandson to serve as lead plaintiffs.

On December 21 of last year, Ferraiori brought this putative securities class action against defendants alleging that they violated the Securities Exchange Act of 1934 by failing to disclose the extent to which Triterras's business relied on a third party that had recently announced a restructuring causing Triterras's share and warrant prices to fall.

The same day he filed the complaint against defendant Triterras, he published the statutorily required notice advising members of the putative class that they had 60 days to move to serve as lead plaintiff.  Two putative class members timely filed such motions; plaintiff Ferraiori, and moving party Erlandson.  And the parties' briefing was concluded on March 12.

I now turn to the legal standard.

The Private Securities Litigation Reform Act, or PSLRA "provides that a Court should appoint as lead plaintiff the member or members of the purported plaintiff class that it determines to be most capable of adequately representing the interests of the class members." *Chilton versus Chiumento Group*, 365 F.App'x 298, 299 quoting 15 United States Code, Section 78u-4(a)(3)(B)(i).  The plaintiff with the largest financial interest in the relief sought by the class and who otherwise satisfies the requirements of Federal Rule of Civil Procedure 23 is presumptively the most adequate plaintiff. That's also *Chilton* quoting 78u-4(a)(3)(B)(iii)(1).  *Chilton* goes on to say "The Rule 23 requirements applicable here mandate that the claims or defenses of the representative parties be typical of the claims or defenses of the class (the typicality requirement) and that the representative parties fairly and adequately protect the interests of the class (the adequacy requirement)."  "In deciding a motion to serve as lead plaintiff, the moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *Khunt versus Alibaba*, 102 F.Supp. 3d 523, 536 (S.D.N.Y. 2015).  Accordingly, "a wide-ranging analysis under Rule 23 is not appropriate at this initial stage of the litigation and should be left for consideration on a motion for class certification."  Also Khunt at 536.

"Lead plaintiffs' claims are typical where each class

member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Millennial Media*, 87 F.Supp. 3d 563, 571 (S.D.N.Y. 2015). "It is important to note, however, that the lead plaintiffs' claims do not have to be identical to the other class members' claims." That's *Khunt* at 539. The adequacy requirement is satisfied where, one, class counsel is qualified, experienced, and generally able to conduct the litigation; two, the class members' interests are not antagonistic to one another; and three, the plaintiff has sufficient interest in the outcome of the case to ensure vigorous advocacy. *Khunt* at 536. Further: The PSLRA provides that the lead plaintiff cannot be subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Khunt* at 537, quoting the statute.

Finally, the PSLRA provides that the most adequate plaintiffs shall, subject to the approval of the Court, select and retain counsel to represent the class. *In re Petrobras*, 104 F.Supp. 3d 618, 625 (S.D.N.Y. 2015) quoting 78u-4(a)(3)(B)(v). *Petrobras* goes on to explain that this evidence is a strong presumption in favor of approving a properly selected lead plaintiff's decision as to counsel selection and counsel retention. The Court should not disturb the lead plaintiff's choice of class counsel unless necessary to protect the interests of the class. *Khunt* at 540.

All right.  Here, as far as we know, the moving party, Erlandson, has the largest financial interest in the relief sought by the class.  He allegedly suffered approximately $29,126 in losses after acquiring 6,890 shares of Triterras stock on December 15 and 16, 2020.  That's in docket entry 12, the Rosenfeld declaration, Exhibit C.  By comparison, Mr. Ferraiori allegedly suffered approximately $685 in losses after buying 590 Triterras warrants on December 7, 2020.  And that is in docket entry 70, Linkh declaration, Exhibit D.  Erlandson's purchases were made during the alleged class period, and he allegedly suffered losses because of defendant's material omissions, making his claims typical of each member's class claims.  He also has a sufficient interest in the outcome of the case to ensure vigorous advocacy.  See his declaration, the Erlandson declaration, which is Exhibit D to the Linkh declaration.  There's no indication that his interests are antagonistic to other class members or that his claims would be subject to unique defenses that would render him incapable of adequately representing the class.  Further, as detailed in his memorandum of law in support of his motion, his chosen counsel is qualified, experienced, and generally able to conduct the litigation.  See Erlandson's memorandum, which is docket entry 11 at pages five to seven.  Because he has the largest financial interest in the relief sought by the class and otherwise satisfies the requirements of Rule 23, he is

presumptively the most adequate plaintiff.  *See Chilton* at 299.

That presumption may be rebutted with proof that he will not fairly and adequately protect the interests of the class or is subject to unique defenses that will render him incapable of adequately representing the class.  Ferraiori does not argue that Erlandson is subject to unique defenses, but Ferraiori does contend that he should be appointed co-lead plaintiff to assure that warrant holders are adequately represented.  See docket entry 15, Ferraiori's opposition at page one.  Alternatively, Ferraiori requests he be appointed lead plaintiff for a sub-class of warrant purchasers.  That's in Ferraiori's opposition at page one, note one.  Erlandson opposes Ferraiori's motion in document 14.

Ferraiori argues that because Erlandson bought common stock only, his standing could be attacked by the defendant.  This argument is unavailing.

"Nothing in the PLSRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action.  Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim.  In those cases, just as a class representative can establish the requisite typicality under Rule 23, if the defendants committed the same wrongful

acts in the same manner against all members of the class, so, too, can lead plaintiffs." *Hevesi v. Citigroup*, 666 F.3d 70, 82-83. Accordingly, "under the PSLRA, the fact that plaintiffs might have different types of security does not require a separate class or a co-lead plaintiff." *Khunt* at 531, *accord Freudenberg v. E\*Trade* 2008 WL 2876373 at \*6 (S.D.N.Y. July 16, 2008).

Instead, "the relevant inquiry is whether there are likely to be subclasses of investors with conflicting interests." *Glauser versus EVCI*, 236 F.R.D. 184, 189 (S.D.N.Y. 2006). Ferraiori posits that if Erlandson were the only lead plaintiff, there's no guarantee that the warrant purchasers' interests will be protected throughout the case. That's in his opposition of two to three. He suggests that Erlandson could effectively shut out the warrant holders from the recovery or disproportionately reward common stock investors over warrant holders. That's at page three of his opposition. But this is pure speculation. And if it occurred, it would be grounds for objecting to any proposed settlement. Although Erlandson purchased a different type of security than Ferraiori, and therefore their interests might not be identical, Ferraiori has not explained how their interests conflict. If anything, it would seem that stockholders and warrant holders interests in this litigation are aligned in that buyers of both sorts of securities are betting on the stock going up making a co-lead

plaintiff unnecessary.  *Cf. Fishbury v. Connetics Corp.*, 2006 WL 3711566 at *3-*4 (S.D.N.Y. December 14, 2006) where the fact that the lead plaintiff had bought the stock rather than options was not grounds for appointing a co-lead plaintiff.

"Because the PSLRA does not recommend or delimit a specific number of lead plaintiffs, the lead plaintiff decision must be made on a case-by-case basis, taking account of the unique circumstances of each case."  *In re Oxford Health Plans*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).  Taking a belt-and-suspenders approach, at least one Court has appointed co-lead plaintiffs in similar circumstances based on the mere possibility that a conflict would arise.  *See Freudenberg* at *7, which appointed a co-lead plaintiff who bought stocks where the plaintiff with the largest financial interest had purchased contracts for difference.  This, however, appears to be the exception rather than the rule.  Most courts appoint co-lead plaintiffs only after a finding that the plaintiff with the largest financial interest could not adequately represent the class, or where the co-lead plaintiffs agree to cooperate.  *See Simmons versus Spencer*, 2014 WL 1678987 at *4-6 (S.D.N.Y. April 25, 2014) which appointed co-lead plaintiffs where the plaintiff with the largest financial interest differed depending on the method of calculating losses and plaintiffs' disagreement over which claims qualified as losses presented a potential conflict of interest among class members.  *Gordon*

*versus Sonar Capital Management*, 1193844 at (S.D.N.Y. April 9, 2012), which appointed co-lead plaintiffs where one plaintiff had only sold shares during the class period while the other had bought and sold and where the plaintiffs agreed to cooperate.  *Plumbers & Pipefitters versus First Bancorp*, 409 F.Supp 2d 482, 483 (S.D.N.Y. 2006), which appointed co-lead plaintiffs where the plaintiff with the largest financial interest had very little investment expertise and virtually no prior PSLRA litigation experience and the plaintiff with the second largest financial interest might have been subject to special defenses.  *In re Oxford Health Plans*, 182 F.R.D. at 47, which appointed co-lead plaintiffs where the investor with the largest financial interest was a pension fund, that because of its fiduciary obligations, faced the possibility of dropping out as lead plaintiff if the reasonable prospect of recovery did not exceed the costs accrued.  Additionally, "co-lead plaintiffs might be appropriate in the certain situations, such as two institutional investors with roughly equal economic losses in a particular case, or two or more smaller investors with roughly equal interests where there is no plaintiff with a significantly larger interest than all other plaintiffs." *Glauser*, 236 F.R.D. at 189; *see Dolan versus Axis Capital*, 2005 WL 883008 at *5 (S.D.N.Y. April 13, 2005), which granted a joint request to appoint co-lead plaintiffs who suffered relatively small losses that were similar in size.  Otherwise,

where, as here, the interest of one investor far exceeds the interests of another, courts have declined to appoint co-lead plaintiffs. *See Glauser* at 189.

Because there's no factual basis to conclude that Erlandson's interests are antagonistic to those of warrant holders like Ferraiori or that he will face unique defenses, Ferraiori has not demonstrated the need to appoint himself as co-lead plaintiff or lead plaintiff of a sub-class of warrant purchasers. "If it later turns out that their interests are antagonistic, the Court will revisit the issue." *Glauser* at 189; *see Khunt* at 541, where the Court said "If pretrial discovery reveals rifts within the class that requires subclasses, the issue will be addressed at that time"; *Fishbury* at *4, where the Court said speculation about potential class standing problems should not be resolved by the appointment of multiple lead plaintiffs but rather by the appointment, if necessary and desirable, of additional class representatives as the litigation proceeds; and *In re Elan Corp*., 2002 WL 31720410 at *4 (S.D.N.Y. December 3, 2002), which declined to appoint a co-lead plaintiff where the plaintiff with the largest financial interest had no clear conflict of interest, noting that whether subclasses were necessary would be revisited in greater detail at the class certification stage. "As a general rule, when all plaintiffs are similarly situated in terms of injury, as they are here,

the class is best served by having one lead plaintiff and one lead counsel to minimize legal fees." *Glauser* at 189-90. *Glauser* in addition says "Rather than better serving the interests of individual class members, the appointment of a co-lead plaintiff would only serve to fracture the leadership and drive up attorneys fees."  At least for now, Ferraiori's appointment as co-lead plaintiffs "would risk creating the very problems of duplication and coordination that the Court seeks to avoid by designating a single lead plaintiff and lead counsel."  *In re Petrobras* at 625.

I also note that in contrast to Erlandson who submitted a declaration attesting to his business and investment experience, Ferraiori has provided no background information from which I could discern whether he could adequately serve as co-lead plaintiff.  *See In re HEXO* 2020 WL 5503634 at *1 (S.D.N.Y. September 11, 2020), which noted that even a preliminary showing of adequacy requires a threshold amount of information regarding an individual movant's background and sophistication; and *Karp versus Diebold*, 2019 WL 5587148 at *6 (S.D.N.Y. October 30, 2019), which declined to appoint as lead plaintiffs investors who "provided the Court with little to go on with respect to their alleged capacity to manage the litigation." *Adhered to on reconsideration* 2019 WL 6619351 (S.D.N.Y. December 5, 2019).

Accordingly, I am not going to appoint Ferraiori as a

co-lead plaintiff or as a lead plaintiff of a subclass of warrant purchasers at this time, and for the foregoing reasons, Erlandson's motion to serve as lead plaintiff is granted.  I also approve his selection of Robbins Geller Rudman & Dowd LLP as lead counsel, which, as detailed in his memorandum, has extensive experience with securities class actions like this one.  Ferraiori's motion is denied.  The Clerk of Court should terminate motions numbered five and ten.

I do have one question for Mr. Erlandson's counsel about his proposed order, which is docket entry 13.  Paragraph two of that order, if I were to sign it, would consolidate all securities class actions on behalf of purchasers of Triterras securities arising out of the same or substantially similar subject matter.  I don't know that there are any such cases, but I also don't think I could just unilaterally decide to consolidate all such cases.  So it's my inclination to strike paragraph two from the proposed order unless somebody can tell me why I should preemptively order that all future cases, which there may never be any of, should be consolidated.

MS. CARINGAL:  Your Honor.

THE COURT:  Or I even can make it a case-by-case decision.

MS. CARINGAL:  Yes, we're okay with you striking that paragraph.

THE COURT:  All right, then I'll strike that

paragraph.

As far as I can tell, the defendant's not been served yet, certainly hasn't appeared, so we'll wait for that in terms of next steps.

MS. CARINGAL:  Your Honor, it does not appear that defense have been served in this action, so we're requesting additional time to do so.  Approximately 45 to 60 days, if that works for your Honor.

THE COURT:  The case was filed in December, so the 90 days has already run.

All right, does anybody want to tell me why service was not accomplished?

MR. LINEHAN:  So we've attempted service a couple of times at the location in Triterras's SEC filings and have been unsuccessful.  So we're in the process of attempting to initiate international service at their location in Singapore but have not made substantial progress toward completing that.

THE COURT:  They don't have a Secretary of State that you can serve?

MR. LINEHAN:  I don't personally know -- have enough detail about exactly how service in this instance would work, so I don't have an answer to that question.

THE COURT:  I'll extend plaintiff's time to serve till May 31st subject to any application defendant may make when it appears.

MR. ROSENFELD:  Thank you.

THE COURT:  All right, anything else we should do now?  Thank you everybody.  Stay healthy, and I'll await next steps.  Take care.

(Proceedings concluded)

CERTIFICATE:  I hereby certify that the foregoing is a true and accurate transcript, to the best of my skill and ability, from my stenographic notes of this proceeding.

_____

Angela A. O'Donnell, RPR,Official Court Reporter, USDC, SDNY

Angela O'Donnell - Official Court Reporter
914-390-4025