UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| JOHN A. ERLANDSON and JAMES IAN NORRIS, Individually and on Behalf of All Others Similarly Situated, | : : : : : | Civil Action No. 7:20-cv-10795-CS |
| Plaintiffs, | : : : | CLASS ACTION |
| vs. | : : : : | PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT |
| TRITERRAS, INC. (f/k/a NETFIN HOLDCO), NETFIN ACQUISITION CORP., TRITERRAS FINTECH PTE. LTD., MVR NETFIN LLC, RICHARD MAURER, MARAT ROSENBERG, VADIM KOMISSAROV, GERALD PASCALE, SRINIVAS KONERU, JAMES H. GROH, ALVIN TAN, JOHN A. GALANI, MATTHEW RICHARDS, VANESSA SLOWEY and KENNETH STRATTON, | : : : : : : : : : : : : : : : | |
| Defendants. | : : : | |

4861-8593-6415.v1

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ....................................................................................................1

II.    SUMMARY OF THE ACTION..............................................................................3

III.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..............................5

       A.   Terms of the Settlement ..............................................................................5

       B.   The Standards for Preliminary Approval of a Proposed Settlement........................7

       C.   The Settlement Satisfies the Rule 23(e)(2) Factors .................................................9

            1.   Plaintiffs and Their Counsel Have Adequately Represented the Class...........................................................................................................9

            2.   The Proposed Settlement Was Negotiated at Arm's Length ....................10

            3.   The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal....................................................................11

            4.   The Proposed Method for Distributing Relief Is Effective........................14

            5.   Attorneys' Fees and Expenses ...................................................................14

            6.   The Parties Have No Additional Agreement Other than an Agreement to Address Requests for Exclusion ........................................15

            7.   Class Members Are Treated Equitably.......................................................15

       D.   The Settlement Also Satisfies the Remaining *Grinnell* Factors ...........................16

            1.   The Stage of the Proceedings.....................................................................16

            2.   The Risks of Maintaining the Class Action Through Trial........................17

            3.   The Ability of Defendants to Withstand a Greater Judgment....................18

            4.   The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation........................................18

IV.    THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE ..........................................................................20

V.     CERTIFICATION OF THE CLASS IS APPROPRIATE................................................22

VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS.............................................25

4861-8593-6415.v1

**Page**

VII.    CONCLUSION.........................................................................................................25

4861-8593-6415.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000)..............................................................................................24

*Billhofer v. Flamel Techs., S.A.*,
281 F.R.D. 150 (S.D.N.Y. 2012) ..............................................................................23, 24

*Butler v. Suffolk Cnty.*,
2016 WL 11480705 (E.D.N.Y. June 15, 2016),
*report and recommendation adopted sub nom.*
*Lynch v. Suffolk Cnty.*, 2016 WL 4508343 (E.D.N.Y. Aug. 29, 2016) ..................................20

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) .....................................................................................24

*Chavarria v. New York Airport Serv., LLC*,
875 F. Supp. 2d 164 (E.D.N.Y. 2012) .............................................................................19

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)...................................................................11

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)........................................................................................11, 18

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)........................................................................2, 8, 11, 16

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
301 F.R.D. 116 (S.D.N.Y. 2014) .....................................................................................9

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .................................................................10

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ...............................................................................17, 23

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)................................18

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
281 F.R.D. 134 (S.D.N.Y. 2012) .....................................................................................24

4861-8593-6415.v1

**Page**

*In re BHP Billiton Ltd. Sec. Litig.*,
　2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019)..........................................................................15

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
　343 F. Supp. 3d 394 (S.D.N.Y. 2018),
　*aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020)..................................7, 21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
　2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)....................................................................10, 11

*In re Genworth Fin., Inc. Sec. Litig.*,
　No. 1:14-cv-02392-AKH, slip op. (S.D.N.Y. Nov. 16, 2017)...................................................15

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
　279 F.R.D. 151 (S.D.N.Y. 2011) ....................................................................................18, 19

*In re Glob. Crossing Sec. & ERISA Litig.*,
　225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................................17

*In re IMAX Sec. Litig.*,
　283 F.R.D. 178 (S.D.N.Y. 2012) .........................................................................................21

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
　246 F.R.D. 156 (S.D.N.Y. 2007) .........................................................................................20

*In re Michael Milken & Assocs. Sec. Litig.*,
　150 F.R.D. 57 (S.D.N.Y. 1993) ...........................................................................................19

*In re PaineWebber Ltd. P'ships Litig.*,
　147 F.3d 132 (2d Cir. 1998)...................................................................................................7

*In re Stock Exchs. Options Trading Antitrust Litig.*,
　2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006) ........................................................................21

*In re Telik, Inc. Sec. Litig.*,
　576 F. Supp. 2d 570 (S.D.N.Y. 2008)...................................................................................11

*In re Time Warner, Inc. Sec. and ERISA Litig.*,
　2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................................................................19

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
　No. 1:18-cv-01620-VM, slip op. (S.D.N.Y. Mar. 24, 2020) ...................................................22

4861-8593-6415.v1

**Page**

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
   2017 WL 2062985 (S.D.N.Y. May 15, 2017) .........................................................23

*In re Vitamin C Antitrust Litig.*,
   2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012)..........................................................18

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ..............................................................................23

*In re Warner Chilcott Ltd. Sec. Litig.*,
   2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)..........................................................16

*Isolde v. Trinity Indus., Inc.*,
   No. 3:15-cv-02093-K, slip op. (N.D. Tex. Mar. 24, 2020).......................................22

*Villella v. Chem. & Mining Co. of Chile Inc.*,
   333 F.R.D. 39 (S.D.N.Y. 2019) ................................................................................9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................................7

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)......................................................................................21

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78j(b).......................................................................................................................3
   §78t(a) .......................................................................................................................3
   §78u-4(a)(4) .....................................................................................................2, 6, 15
   §78u-4(a)(7) ...............................................................................................................2
   §78u-4(a)(7)(A)-(F) ..................................................................................................22

4861-8593-6415.v1

**Page**

Federal Rules of Civil Procedure
  Rule 23 ..................................................................................................................2, 21
  Rule 23(a).........................................................................................................2, 8, 22
  Rule 23(a)(2)...............................................................................................................23
  Rule 23(b) ....................................................................................................................8
  Rule 23(b)(3)...................................................................................................2, 22, 24
  Rule 23(e)...............................................................................................................7, 22
  Rule 23(e)(1) .............................................................................................................2, 8
  Rule 23(e)(2) ..........................................................................................................2, 8, 9
  Rule 23(e)(2)(A) ...........................................................................................................9
  Rule 23(e)(2)(C)(i).....................................................................................................11
  Rule 23(e)(2)(C)(ii)....................................................................................................14
  Rule 23(e)(2)(C)(iii)...................................................................................................14
  Rule 23(e)(2)(C)(iv)...................................................................................................15
  Rule 23(e)(2)(D) .........................................................................................................15
  Rule 23(e)(3)................................................................................................................8

## SECONDARY AUTHORITIES

Janeen McIntosh and Svetlana Starykh,
  *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*
  NERA Economic Consulting (Jan. 25, 2022)..........................................................19

4861-8593-6415.v1

Court-appointed Lead Plaintiff John A. Erlandson and additional plaintiff James Ian Norris ("Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion for preliminary approval of the proposed Settlement. The requested relief is set forth in the parties' agreed-upon form of [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") and exhibits thereto.

## I.    INTRODUCTION

The proposed Settlement, memorialized in the Stipulation filed concurrently herewith, provides a recovery of $9 million in cash, inclusive of attorneys' fees and expenses ("Settlement Amount"), to resolve these claims against defendant Triterras, Inc. ("Triterras") and other entities and individuals (collectively, "Defendants").[1] The Settlement is the result of a comprehensive assessment of the strengths and weaknesses of the claims asserted in this Action, the costs and risks of proceeding with the Litigation, and the benefit to Class Members of receiving a substantial, immediate recovery.

The Settlement represents a favorable recovery based on Plaintiffs' estimated recoverable damages, and was reached only after extensive negotiations with the assistance of Jed D. Melnick, Esq. of JAMS, a nationally-recognized mediator experienced in resolving complex securities class actions. The Settlement will eliminate the risks and uncertainty of continued proceedings by ensuring that Class Members will receive compensation now – instead of many months or years as this Action winds its way through the court system, or perhaps never, if Defendants prevail at any stage of this Litigation.

---

[1]    Unless otherwise noted, all capitalized terms herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated as of April 27, 2022 ("Stipulation"). As the Stipulation reflects, the other Defendants are Netfin Acquisition Corp. ("Netfin"), Triterras Fintech Pte. Ltd. ("Fintech"), MVR Netfin LLC, Richard Maurer, Marat Rosenberg, Vadim Komissarov, Gerald Pascale, Srinivas Koneru, James H. Groh, Alvin Tan, John A. Galani, Matthew Richards, Vanessa Slowey, and Kenneth Stratton.

- 1 -

4861-8593-6415.v1

The Settlement satisfies Rule 23(e)(1) of the Federal Rules of Civil Procedure for the issuance of the Notice, as well as each of the Rule 23(e)(2) factors and those identified in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), which courts consider at the preliminary and final approval stages.[2] Accordingly, Plaintiffs respectfully request preliminary approval of the Settlement so that notice may be provided to the Class pursuant to the proposed Preliminary Approval Order, submitted herewith as Exhibit A to the Stipulation, which will:

1.    Preliminarily approve the Settlement on the terms set forth in the Stipulation;

2.    Find that the Class satisfies each element of Rules 23(a) and 23(b)(3) and should be certified for settlement purposes;

3.    Approve the form and content of the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Summary Notice, attached as Exhibits A-1 and A-3 to the Stipulation;

4.    Find that the procedures for distributing the Notice and publication of the Summary Notice, as set forth in the Preliminary Approval Order, constitute the best notice practicable under the circumstances and comply with the requirements of due process, Rule 23, and Section 21D(a)(7) of the Exchange Act, 15 U.S.C. §78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

5.    Establish a schedule and procedures for disseminating the Notice and publishing the Summary Notice; requesting exclusion from the Class; objecting to any aspect of the Settlement, Plan of Allocation, Lead Counsel's application for an award of attorneys' fees, charges, and expenses or Plaintiffs' application for awards pursuant to 15

---

[2]    Citations, internal quotations, and footnotes omitted unless otherwise noted.

4861-8593-6415.v1

U.S.C. §78u-4(a)(4); submitting papers in support of final approval of the Settlement; and the Settlement Hearing.

## II.    SUMMARY OF THE ACTION

Triterras emerged from a transaction involving a special purpose acquisition company (or "SPAC") known as Netfin, which, through a series of inter-related transactions, acquired Fintech (now, a Triterras subsidiary).  Triterras – a Cayman Islands holding company based in Singapore – operates an online commodities trading platform known as Kratos, which Fintech operates.  The platform facilitates commodities transactions by matching traders with funders and providing other services.

On December 21, 2020, a putative purchaser of Triterras warrants commenced this Action by filing a class action complaint, asserting claims under Sections 10(b) and 20(a) of the Exchange Act on behalf of purchasers of Triterras securities from August 20, 2020 through December 16, 2020. ECF 1.  Consistent with the PSLRA, putative Triterras's investors filed competing motions for the appointment of lead plaintiff and lead counsel and, on April 15, 2021, the Court issued an order appointing Mr. Erlandson as Lead Plaintiff and approving his counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), as Lead Counsel.

On July 1, 2021, Plaintiffs filed an amended complaint ("Amended Complaint") which augmented the allegations in the initial complaint, naming 12 additional defendants and asserting claims under both the Exchange Act and the Securities Act during a proposed class period of June 29, 2020 through January 14, 2021 ("Class Period").  Generally, the claims arose from alleged misstatements and omissions during the Class Period concerning several subjects: (i) relationships between insiders at Netfin and Fintech and the employment history of certain executives, some of whom occupied management-level positions at Triterras; (ii) the way Netfin's acquisition of Fintech

arose from transactions which resulted in forming Triterras; (iii) the financial condition of Rhodium Resources Pte. Ltd. ("Rhodium"), an entity related to Fintech and Triterras, and the implications of Rhodium's condition for Triterras's business; (iv) the users of Fintech's trading platform; and (v) the state of the commodities trade financing industry.

These issues, in turn, arose after Triterras disclosed in December 2020 that Rhodium would seek to restructure its debts under Singapore's Insolvency, Restructuring and Dissolution Act in response to a claim from an unrelated creditor. In December 2020 and January 2021, two investing firms also published reports purporting to identify undisclosed details about alleged relationships and transactions among insiders at Netfin, Fintech, and Triterras, as well as other information that the reports claimed was previously undisclosed or otherwise not publicized. Plaintiffs alleged that these revelations drove down the trading price of Triterras's stock and warrants, resulting in substantial investor losses.

In response, Triterras publicly refuted some of the allegations from the reports and resolved to conduct an internal investigation. But Triterras continued to face difficulties. Shortly after the January 2021 report, Triterras's auditor, KPMG, resigned; in April 2021, two directors overseeing the investigation (Richards and Slowey) resigned; and in July 2021, Triterras received notice that it was not in compliance with NASDAQ listing requirements for failing to file its Annual Report for the fiscal year ended February 28, 2021. Due to claimed delays in terminating its replacement outside auditor and hiring another one, Triterras could not file its Annual Report until March 2022 – over a month after NASDAQ had delisted its securities. Triterras's stock and warrants now trade on the Over the-Counter market under the symbols "TRIRF" and "TRIRW," respectively.

As Triterras's navigated these challenges, Robbins Geller continued to investigate the claims alleged and monitored developments affecting Triterras, securing the opportunity, on consent, to file

- 4 -

4861-8593-6415.v1

a further amendment of the Amended Complaint.  The parties also agreed, subject to the Court's approval, to stay the Action pending the outcome of discussions concerning a potential resolution. Ultimately, the parties participated in an all-day mediation session with Mr. Melnick on October 8, 2021, after setting forth their respective positions in confidential mediation statements.  While that effort was productive, it was unsuccessful.  As a result, the parties continued to discuss the prospect of a potential resolution with Mr. Melnick, eventually reaching an agreement-in-principle to settle this Action for $9 million in cash.  The parties then negotiated the terms of the Memorandum of Understanding, dated January 22, 2022 ("MOU"), and, later, the Stipulation and related materials.

## III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    Terms of the Settlement

The Settlement resolves all of the Class's claims against Defendants.  The Stipulation provides that Triterras and/or its insurer(s), on behalf of Defendants, will pay or cause to be paid: (1) at least half of the Settlement Amount ($4.5 million) within ten calendar days of the entry of an order granting preliminary approval of the Settlement; and (2) the remaining balance ($4.5 million) within four calendar days thereafter.  Stipulation, ¶2.2.  For the Class's benefit, Robbins Geller, as Escrow Agent, will invest the Settlement Amount in instruments backed by the Full Faith & Credit of the U.S. Government or an Agency thereof, or fully insured by the U.S. Government or an Agency thereof, and reinvest the proceeds of the instruments as they mature in similar instruments at their then-current market rates.  *Id*., ¶¶1.9, 2.4.

The recovery to individual Class Members will depend on variables outlined in the proposed Plan of Allocation (set forth in the Notice), including the number and aggregate amount of claims submitted by eligible Class Members, as well as the timing and amount of their purchases and sales of Triterras securities.  Based on the proposed Plan of Allocation, and assuming that valid claims are

- 5 -

submitted for every eligible Class A common share or warrant of Triterras, the estimated average recovery would be $0.25 per share and $0.05 per warrant, before deducting fees, expenses, or other awards that the Court may approve. Stipulation, Ex. A-1, §II. Historically, actual claims rates have been substantially below 100%, resulting in greater distributions for class members.

The Settlement Amount, plus accrued interest, comprises the Settlement Fund. The cost of Settlement administration – including the costs of notice to the Class, Taxes, and Tax Expenses – will be funded by the Settlement Fund. Stipulation, ¶¶2.6, 2.8. Plaintiffs propose an experienced and nationally-recognized class-action settlement administrator, Gilardi & Co. LLC ("Gilardi"), to disseminate notice to the Class in accordance with the process set forth in the Preliminary Approval Order. *Id.*, ¶1.2. If the Court grants preliminary approval, the Claims Administrator will mail the Notice and Proof of Claim (Exhibits A-1 and A-2 to the Stipulation) to Class Members who can be identified with reasonable effort. Stipulation, Ex. A, ¶10. The Claims Administrator will also cause the Summary Notice (Exhibit A-3 to the Stipulation) to be published once in the national edition of *The Wall Street Journal* and once over a national newswire service. *Id.*, Ex. A, ¶11.

The Notice explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Class Members, who submit valid and timely Proofs of Claim, under the Plan of Allocation and subject to this Court's approval; there will be no reversion to Defendants. Stipulation, Ex. A-1, at 20. The Notice also describes: (1) Lead Counsel's application for attorneys' fees, charges, and expenses, and Plaintiffs' application for an award pursuant to 15 U.S.C. §78u-4(a)(4); (2) the procedures for requesting exclusion from the Class or objecting to the Settlement, the Plan of Allocation, or Lead Counsel's or Plaintiffs' requests; and (3) the date and time for the

- 6 -

Settlement Hearing.[3]  *See* Stipulation, Ex. A-1.

In exchange for the benefits provided by the Settlement, Class Members will release any and all claims against Defendants concerning, based on, arising out of, or in connection with both: (i) "the purchase or acquisition of Class A common stock or warrants of Triterras during the Class Period"; and (ii) "the acts, facts, statements or omissions that were or could have been alleged or asserted by Plaintiffs relating to conduct which occurred during the Class Period."  Stipulation, ¶1.22.  The released conduct covers, among other things, alleged false and misleading statements and omissions during the Class Period, including those used to solicit purchases of Triterras securities or that could have induced investors to purchase Triterras securities.  *Id.*

As detailed herein, the proposed Settlement is a favorable result for the Class and provides a significant cash recovery now without the risks and delays of further litigation.

### B.    The Standards for Preliminary Approval of a Proposed Settlement

Rule 23(e) requires judicial approval for settling claims brought as a class action.  Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval.").  The settlement of class-action litigation is favored and encouraged.  *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (recognizing a "strong judicial policy in favor of settlements, particularly in the class action context"); *see also In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (same, citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).

---

[3]    The Notice advises that Defendants may withdraw from and terminate the Settlement if Class Members who purchased or acquired in excess of a certain amount of Class A common stock or warrants opt out of the Class. Stipulation, Ex. A-1, at 15. Although the threshold opt-out percentage required to trigger Defendants' termination option is not public, the Stipulation describes the general terms of the Supplemental Agreement that governs this option. Stipulation, ¶7.3.

4861-8593-6415.v1

Under Rule 23(e)(1), as amended, the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> (2)    ***Approval of the Proposal***.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)    the class representatives and class counsel have adequately represented the class;
> >
> > (B)    the proposal was negotiated at arm's length;
> >
> > (C)    the relief provided for the class is adequate, taking into account:
> >
> > > (i)    the costs, risks, and delay of trial and appeal;
> > >
> > > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
> > >
> > > (iv)    any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D)    the proposal treats class members equitably relative to each other.

These factors largely overlap with the *Grinnell* factors, which include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.  As discussed below, the proposed Settlement satisfies each of the factors identified in Rule 23(e)(2), as well as each of the *Grinnell* factors.  In addition, each of the Rule 23(a) and (b) factors are met for certification of a class for settlement purposes.  Accordingly, Notice of the proposed Settlement should be sent to the Class.

- 8 -

4861-8593-6415.v1

    **C.**       **The Settlement Satisfies the Rule 23(e)(2) Factors**

          **1.**      **Plaintiffs and Their Counsel Have Adequately Represented the Class**

Plaintiffs and Lead Counsel clearly satisfy the adequacy requirements of Rule 23(e)(2)(A), because they have diligently investigated and prosecuted this Litigation on behalf of the Class. These efforts resulted in the preparation of the Amended Complaint, spanning 381 numbered paragraphs over 142 pages, which substantially augmented the initial Exchange Act claims. These efforts also provided Plaintiffs with a thorough understanding of potential strengths and weaknesses of the theories of liability asserted. This understanding positioned Plaintiffs to propose mediation, prepare an effective mediation statement and presentation to Mr. Melnick, and successfully resolve this Action. Reaching a resolution was particularly challenging here because this Action involves arguably novel claims arising out of Triterras's de-SPAC transaction – a developing area of law and regulation, as reflected by the SEC's recent proposal to enhance the disclosure framework relating to SPACs. *See* https://www.sec.gov/news/press-release/2022-56 (March 30, 2022 SEC press release).

Lead Counsel has substantial experience in prosecuting complex securities class actions, and that experience directly led to the favorable result here at the early stages of this Litigation. *See, e.g.*, *Villella v. Chem. & Mining Co. of Chile Inc.*, 333 F.R.D. 39, 59 (S.D.N.Y. 2019) (finding that Robbins Geller "has extensive experience in securities class actions and complex litigation," which reflect "its ability to manage this litigation"); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 135 (S.D.N.Y. 2014) ("The Court finds that Robbins Geller . . . is experienced in securities class action litigation and qualified to conduct this lawsuit" and "has previously been deemed qualified in similar litigation."); *see also* www.rgrdlaw.com. Lead Counsel also worked collaboratively with additional counsel from Levi & Korsinsky, LLP, which is also experienced in litigating securities class actions.

4861-8593-6415.v1

Bringing this experience and knowledge to bear, and given the unique challenges present in this case, Lead Counsel believes that the Settlement is in the best interests of the Class. *See Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) (recognizing that "great weight is accorded to counsel's recommendation" if a settlement is reached by experienced counsel after arm's-length negotiations); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *13 (S.D.N.Y. Nov. 8, 2010) ("[G]reat weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### 2. The Proposed Settlement Was Negotiated at Arm's Length

The Settlement is the result of extensive, arm's-length negotiations with sophisticated counsel conducted through an experienced and neutral mediator. Because these negotiations took place earlier in the Litigation, after the filing of the Amended Complaint but before the filing of a dismissal motion, the parties worked on developing a thorough understanding of the strengths and weaknesses of their claims and defenses and balanced those considerations against the risks of continued litigation. Here, the mediator was instrumental in separately working with the parties to achieve a reasonable result.

But the all-day mediation on October 8, 2021 was not successful. For weeks thereafter, further discussions and negotiations took place with the mediator, who ultimately submitted to the parties a "mediator's recommendation" intended to resolve the Action. Even then, however, Plaintiffs closely evaluated the recommendation and engaged in further discussions over the course of several weeks, also extensively consulting the outside financial consultant they had retained to assist in valuing the claims alleged. Eventually, the parties accepted the mediator's recommendation and thus reached a non-binding agreement-in-principle to resolve this Action, but negotiations concerning the contours of that agreement continued for months. That round of negotiations ended

4861-8593-6415.v1

on January 22, 2022, with the signing of the MOU, but months of additional negotiations took place before the parties could agree on the terms of the binding Stipulation.

In short, negotiations were hard-fought, extensive, lengthy, well-informed, and facilitated by a neutral third-party mediator experienced in evaluating and resolving litigation of this nature.  A strong initial presumption of fairness attaches to a settlement reached by experienced counsel after arm's-length negotiations assisted by a knowledgeable mediator, because the process ensures that the settlement is "free of collusion and undue pressure."  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575-76 (S.D.N.Y. 2008) (recognizing that "a class action settlement enjoys a presumption of correctness" and also "a strong presumption of fairness" when it results from "arm's-length negotiations" by experienced counsel).

### 3.    The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal

Assessing a settlement even at preliminary approval requires balancing the benefits offered to the proposed class against the costs, risks, and delay of continued litigation.  *See* Fed. R. Civ. P. 23(e)(2)(C)(i).  This factor overlaps with the first (the complexity, expense, and likely duration of the litigation) and fourth (the risks of establishing liability and damages) *Grinnell* factors.

Securities class actions are notoriously complex and present numerous hurdles to proving liability and damages that are difficult for plaintiffs to overcome.  *See, e.g.*, *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019) ("In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain."); *Flag Telecom*, 2010 WL 4537550, at *15 (recognizing that complex securities class actions are "notably difficult and notoriously uncertain").

This case is more complex and risky than typical securities class actions because it involves the assertion of claims under the Securities Act and Exchange Act to Triterras's de-SPAC transaction,

alleging theories of liability that are novel and could be difficult to prove. The SEC itself has recently declared the need for improved regulation of disclosure in such transactions, recognizing inadequacies in existing disclosure requirements in effect when the Amended Complaint was filed. This case also involves alleged disclosure failings, which require scienter, from June 29, 2020 to January 14, 2021, against some Defendants not named in the claims directed to the de-SPAC transaction. This related theory of liability implicates heightened pleading standards under the PSLRA and correspondingly more complicated issues of liability and proof. And much of the allegedly undisclosed information was arguably discernible in some way from public sources, albeit with varying degrees of effort.[4]

While Plaintiffs believe that evidentiary support exists for the allegations, they recognize that significant hurdles stand in the way of overcoming dismissal, proving liability, developing evidence, and proceeding to – and prevailing at – trial. Indeed, Defendants have consistently claimed that they properly discharged any required disclosure obligations; Triterras did not restate financials or revise its disclosures in the wake of its investigation and the recent completion of its outside audit; and the SEC has never taken action against any Defendants arising out of Plaintiffs' allegations or, to Plaintiffs' knowledge, otherwise. Discovery would also be complicated because Triterras is based in Singapore and certain Defendants and key witnesses are located there and elsewhere abroad.

Plaintiffs also faced risks in overcoming Defendants' negative causation affirmative defense under the Securities Act and establishing loss causation and damages under the Exchange Act. This

---

[4]    This case is also unique because it asserts Exchange Act claims based on allegedly false and misleading statements and omissions that predate the issuance of Triterras's public securities, but which purportedly remained alive in the market and induced later purchases of those securities. *See* Amended Complaint, ¶216 (describing Triterras's June 29, 2020 press release and Form 8-K). This expansive theory of liability presented novel questions that increased the risk of prevailing in this case. Nonetheless, the proposed release is reasonably limited, covering claims arising out of the purchase of Triterras securities ***and*** that relate to conduct which occurred during the Class Period. Stipulation, ¶1.22.

4861-8593-6415.v1

case alleges damages flowing from three purported corrective disclosures on two dates – December 17, 2020 and January 14, 2021 – none of which Defendants would ever agree are, in fact, corrective. *See* Amended Complaint, ¶¶10-13, 126, 131, 134.  On the first date, December 17, 2020, Triterras disclosed that Rhodium was experiencing financial issues and, separately, an investment report discussed certain relationships between Defendants and others.  On the second date, January 14, 2021, a different investment report discussed some of these same relationships, identified other relationships, and raised questions about Triterras's business.

The extent to which these disclosures revealed previously concealed information sufficient to support a securities claim would undoubtedly become a focal point of expert submissions if this case proceeded beyond the motion-to-dismiss stage.  Indeed, the difficulty in assessing the impact of these disclosures on estimated damages is reflected in the proposed Plan of Allocation included in the Notice, which explains to investors that it weights the January 14, 2021 disclosure at 50%.  *See* Stipulation, Ex. A-1 at 21.

As with contested liability issues, issues relating to loss causation and damages would have come down to an unpredictable and hotly disputed "battle of the experts."  Defendants would no doubt argue that Plaintiffs' damages methodology is unreliable and does not accurately account for the effect that confounding factors or market factors had on the price of Triterras securities.  They would have further argued that damages, if any, are zero or, at best, significantly less than Plaintiffs had estimated. For example, Defendants were likely to attack the length of the Class Period, arguing that (if it could be certified at all) it should be significantly shortened (on the front end or backend), which could have reduced potential damages.

Accordingly, in the absence of a settlement, there was a very real risk that the Class would have recovered an amount significantly less than the total Settlement Amount (or nothing at all).

- 13 -

4861-8593-6415.v1

The $9 million recovery now weighs heavily in favor of preliminary approval of the Settlement, particularly when viewed against the risks, costs, delay, and uncertainty of further proceedings.

### 4.    The Proposed Method for Distributing Relief Is Effective

As demonstrated below, the method and effectiveness of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective.  The notice plan includes direct mail notice to all those who can be identified with reasonable effort, supplemented by publication of the Summary Notice in *The Wall Street Journal* and over a national newswire service.  Stipulation, Ex. A, ¶11.  In addition, a Settlement-specific website will be created where Settlement-related and other key documents will be posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.  *Id.*, ¶10.

The Settlement also contemplates a comprehensive claims administration process, which requests information necessary to calculate a claimant's recognized loss amount under the Plan of Allocation.  The Claims Administrator will process the claims, calculate recognized losses under the Plan of Allocation and, ultimately, distribute the Net Settlement Fund to Authorized Claimants. Plaintiffs' damages consultant prepared the Plan of Allocation at Lead Counsel's direction.

### 5.    Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  The proposed Preliminary Approval Order provides that Plaintiffs' counsel will apply for an award of attorneys' fees and expenses 35 days before the Settlement Hearing.  *See* Stipulation, Ex. A, ¶21.

The proposed Notice states that Lead Counsel intends to seek an award of attorneys' fees of up to one-third of the Settlement Amount and litigation expenses not to exceed $100,000, plus interest on these amounts at the same rate as earned by the Settlement Fund.  *See* Stipulation, Ex. A-

1 at 4. In addition, Plaintiffs will each seek an award of no more than $10,000 ($20,000, in total) pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class. *Id*. The anticipated fee request is in line with awards in other securities settlements recently approved in this District. *See, e.g.*, *In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (awarding 30% of $50 million recovery, plus about $435,000 in expenses); *In re Genworth Fin., Inc. Sec. Litig.*, No. 1:14-cv-02392-AKH, slip op. (S.D.N.Y. Nov. 16, 2017) (awarding 30% of $20 million recovery, plus expenses).

With respect to the timing of payment, the Stipulation provides that any attorneys' fees and expenses awarded shall be paid to Lead Counsel "after the Court executes the Judgment and an order awarding such fees and expenses . . ." Stipulation, ¶6.2.

### 6. The Parties Have No Additional Agreement Other than an Agreement to Address Requests for Exclusion

Rule 23(e)(2)(C)(iv) requires disclosure of any other agreement. The parties have entered into a standard supplemental agreement which provides Defendants with the option to terminate the Settlement if Class Members with a certain amount of purchases or acquisitions of Triterras Class A common stock and warrants request exclusion from the Class. *See* Stipulation, ¶7.3.

### 7. Class Members Are Treated Equitably

The final factor, Rule 23(e)(2)(D), considers whether Class Members are treated equitably. As reflected in the Plan of Allocation set forth in the Notice (Stipulation, Ex. A-1), the Settlement treats Class Members equitably relative to each other, based on the timing of their acquisitions and sales of stock and warrants: Authorized Claimants will receive their respective *pro rata* shares of the Net Settlement Fund based on their recognized losses under the Plan of Allocation.

4861-8593-6415.v1

**D.        The Settlement Also Satisfies the Remaining *Grinnell* Factors**[5]

**1.        The Stage of the Proceedings**

Plaintiffs' and Lead Counsel's knowledge of the merits, and the strengths and weaknesses of the claims, also support the Settlement. This knowledge is based on a prolonged, in-depth, and extensive investigation which began before Lead Plaintiff's appointment and extended beyond the mediation – continuing even as negotiations took place over the terms of the Stipulation and related materials. This investigation involved: analyzing SEC filings, financial information, and public statements regarding Netfin, Fintech, Triterras, and many others; identifying and obtaining records for entities incorporated in a multitude of states and abroad; identifying and attempting to cultivate witnesses with relevant information; and developing international sources of information. This investigation provided the information necessary to prepare the Amended Complaint and provided the platform for a productive mediation and ultimately successful negotiations.

Lead Counsel also extensively consulted an outside financial consultant, who provided useful guidance in evaluating and valuing the claims based on the facts alleged and the estimated impact of the corrective disclosures on the trading price and value of the common stock and warrants. This insight was indispensable. It allowed Plaintiffs and Lead Counsel to realistically assess the prospect of establishing liability and damages, while enabling them to develop an effective plan to negotiate an eventual resolution. The mediator's involvement was also indispensable. Mr. Melnick provided guidance on his candid assessment of the strengths and weaknesses of the claims and defenses and interfaced with each side to drill down on potential points of compromise.

---

[5]    As to the second *Grinnell* factor – the reaction of the class – the Notice has not yet been mailed or otherwise distributed. *See In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature."). If any objections are received after the Notice is disseminated, Lead Counsel will address them in connection with Plaintiffs' motion for final approval of the Settlement and in the reply in further support thereof.

4861-8593-6415.v1

This process allowed Plaintiffs and Lead Counsel to develop adequate information about the claims to negotiate a favorable resolution. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) (finding that even where "no merits discovery occurred in this case to date," lead counsel was "knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend the Settlement").

### 2.    The Risks of Maintaining the Class Action Through Trial

Because the Settlement occurred so early in this Litigation, Plaintiffs faced numerous risks. Service on some Defendants was not completed. Defendants had not yet moved to dismiss; class certification proceedings awaited the resolution of the anticipated dismissal motions; discovery had not begun (and was automatically stayed by the PSLRA); and all other proceedings depended on favorable rulings at these stages. Assuming that Plaintiffs could overcome dismissal and obtain class certification, there was still no guarantee they could secure all of the discovery they required or prevail at summary judgment or trial (or on appeal, if necessary).

Triterras is a Cayman Islands company based in Singapore that operates internationally, with no known assets in the U.S. Many other Defendants are also abroad, and their only connection to the U.S. is through their affiliation with Triterras (which, for some, already ended). These facts raise questions of personal jurisdiction that could affect all aspects of this Litigation, as well as the risk that Plaintiffs and the Class could not enforce a judgment. Further impacting whether any recovery might provide complete relief is that certain Defendants are named on some, but not all, claims. Thus, even if Plaintiffs prevailed, recovery would remain elusive. The $9 million Settlement avoids all of these risks with the certainty of an immediate recovery.

4861-8593-6415.v1

**3.      The Ability of Defendants to Withstand a Greater Judgment**

Another factor – albeit not typically determinative – is a defendant's ability to withstand a judgment greater than the amount offered in the settlement.  *See D'Amato*, 236 F.3d at 86.  Here, Triterras's business and financial condition suffered after the December 2020 news of Rhodium's financial difficulties and issuance of the investor reports referenced in the Amended Complaint.  Much of this information was negative, but not necessarily tied to allegations of nondisclosure or even securities fraud.  Triterras also faced mounting pressure from the setbacks described above and the COVID-19 pandemic, the latter of which adversely affected commodities trading and the trade finance industry.

These developments created a downward spiral in the trading price of Triterras's common stock and warrants and NASDAQ ultimately delisted the securities.  The Settlement naturally took into account Triterras's uncertain future and the pronounced risks facing its business.  Additionally, recovering on a judgment after trial would be immensely difficult here.  Thus, even if Defendants could withstand a greater judgment, that possibility does not necessarily count against approval and many other factors favor the Settlement.  *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012) (acknowledging that "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and . . . this fact alone does not undermine the reasonableness of the instant settlement").

**4.      The Reasonableness of the Settlement in Light of the Best
Possible Recovery and the Attendant Risks of Litigation**

The adequacy of the amount offered in settlement must be judged not "in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y.

- 18 -

1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)).  The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range which recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent" in taking any litigation to completion.  *Giant Interactive Grp., Inc.*, 279 F.R.D. at 162.

A compelling consideration that militates in favor of the reasonableness of the Settlement is that the Settlement provides for payment to the Class now, rather than the speculative possibility of payment years later.  *See In re Time Warner, Inc. Sec. and ERISA Litig.*, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").  And here, the Settlement represents a favorable result for the Class.  Plaintiffs have estimated reasonably recoverable damages of between $80 million and $130 million, depending on various scenarios.  Realistically, recoverable damages at trial would fall within the lower end of that range, which limits losses attributable to the January 14, 2021 report based on the December 2020 disclosures – which revealed information bearing on some of the January 14 disclosures that followed – and other factors.  The Plan of Allocation takes into account this issue and therefore weights the January 14, 2021 disclosure at 50%.

This falls well within the range of reasonableness and supports preliminary approval.  Indeed, the recovery here is multiples above the 1.8% median percentage recovery for losses in securities class actions in 2021.[6]  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 67 (S.D.N.Y. 1993) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."); *see also Chavarria v. New York Airport Serv., LLC*, 875 F. Supp. 2d 164, 175

---

[6]    https://www.nera.com/content/dam/nera/publications/2022/PUB_2021_Full-Year_Trends_012022.pdf (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, at 24, fig. 22, NERA Economic Consulting (Jan. 25, 2022)).

(E.D.N.Y. 2012) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

## IV.    THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE

There are no "rigid rules" that apply when determining the adequacy of notice for a class action settlement.  Rather, when measuring the adequacy of notice under the Due Process Clause or Federal Rules, a court will look to its reasonableness.  *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007).  "Notice need not be perfect, but need only be the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."  *Id.*

The proposed Preliminary Approval Order (Stipulation, Ex. A) provides that the Claims Administrator will mail the Notice and Proof of Claim to all Class Members who can be identified with reasonable effort.  Stipulation, Ex. A, ¶10.  This includes mailing to all Class Members identified by Triterras's transfer agent and brokers and other nominees who purchased or acquired Triterras securities on behalf of others.  *Id.*, ¶13.  The Claims Administrator will also publish the Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service.  *Id.*, ¶11.  Additionally, the Claims Administrator will establish and maintain a Settlement-related website at which the Notice and other relevant materials will be available to Class Members.  *Id.*, ¶10.

Courts have approved similar notice programs in a multitude of cases.  *See Butler v. Suffolk Cnty.*, 2016 WL 11480705, at *4 (E.D.N.Y. June 15, 2016) ("The distribution of the Notice packets by first class mail is a standard method of disseminating Notice.") (collecting cases), *report and recommendation adopted sub nom. Lynch v. Suffolk Cnty.*, 2016 WL 4508343 (E.D.N.Y. Aug. 29,

- 20 -

2016); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 184-85 (S.D.N.Y. 2012) (mailed notice to 1,813 banks, brokerage companies, and institutional investors and notice via publishing an approved form of summary notice through newspapers and via electronic newswires found adequate); *see also Facebook*, 343 F. Supp. 3d at 411 (holding adequate notice was provided where alternate notice was provided in widely distributed publications).

The proposed form of Notice also comports with the requirements of due process, the PSLRA, and Rule 23, and is similar to that routinely approved in other cases. Notice is reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exchs. Options Trading Antitrust Litig.*, 2006 WL 3498590, at *6 (S.D.N.Y. Dec. 4, 2006); *see also Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (the notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings") (alteration in original).

The PSLRA requires that the settlement notice include the following: (1) the amount of the settlement proposed for distribution, determined in the aggregate and on an average per share basis; (2) if the parties do not agree on the average amount of damages per share recoverable in the event plaintiff prevailed, a statement from each party concerning the issue(s) on which the parties disagree; (3) a statement indicating which parties or counsel intend to apply for an award of fees and costs (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought; (4) the name, telephone number, and address of a representative of counsel for the class who will be reasonably available to answer questions about any matter contained in the notice of settlement; (5) a brief statement explaining the reasons why the parties are proposing the settlement; and (6) such other information as may be required by the court.

- 21 -

*See* 15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed Notice contains all of this information. *See* Stipulation, Ex. A-1. It advises recipients that they have the right to request exclusion from the Class or to object to any aspect of the Settlement, the Plan of Allocation, Lead Counsel's fee and expense application, or Plaintiffs' requested awards. It provides recipients with the contact information for the Claims Administrator (Gilardi) and Lead Counsel, and directs recipients to the Settlement website for further information (including electronic copies of the Notice and Proof of Claim). And it advises Class Members of the date, time, and location of the Settlement Hearing.[7] This information is also presented in a way that is accessible to the reader and is in a format similar to notices approved in other cases.

## V.    CERTIFICATION OF THE CLASS IS APPROPRIATE

Under the terms of the Stipulation, the Settling Parties have agreed, for the purposes of the Settlement only, to the certification of the Class. The Class is defined as:

> [A]ll Persons who purchased or otherwise acquired the Class A common stock or warrants of Triterras from June 29, 2020 to and including January 14, 2021. Excluded from the Class are Defendants and their families, officers, affiliates, entities in which they have or had a controlling interest, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded party. Also excluded from the Class are any Persons who timely and validly request exclusion from the Class, as approved by the Court. [Stipulation, ¶1.3.]

The proposed Class satisfies the requirements of Federal Rules 23(a), 23(b)(3), and 23(e),

---

[7] Although the Notice provides for the final approval hearing to take place in person, paragraph 1.A of this Court's Emergency Individual Rules and Practices in Light of COVID-19 (Revised July 29, 2021) provides that, "[u]nless otherwise ordered by the Court, all pretrial conferences and proceedings in civil cases will be held by telephone." Courts have endorsed telephonic final approval hearings. *See, e.g.*, *In re Ubiquiti Networks, Inc. Sec. Litig.*, No. 1:18-cv-01620-VM, slip op. (S.D.N.Y. Mar. 24, 2020) (ECF 48) (ordering final settlement hearing to take place telephonically because of COVID-19); *Isolde v. Trinity Indus., Inc.*, No. 3:15-cv-02093-K, slip op. (N.D. Tex. Mar. 24, 2020) (ECF 174) (ordering final settlement hearing to be conducted by telephone in light of the conditions resulting from the COVID-19 pandemic, and ordering additional notice on the settlement website, the websites of lead counsel, and for lead counsel to personally notify any "belatedly received" objectors). Plaintiffs will modify the Notice if the Court orders the Settlement Hearing to take place by telephone or electronic means, either additionally or exclusively.

4861-8593-6415.v1

and should be certified for settlement purposes only.  In addition, Plaintiffs should be appointed as Class representatives and Lead Counsel should be appointed as Class counsel.

*First*, according to its Annual Report on Form 20-F, as of February 28, 2021, Triterras had over 81 million ordinary shares (each underlying an ADS, when publicly traded) and 25,981,000 warrants outstanding.[8]  Even with Koneru's beneficial insider ownership of over 60% of the shares (excluded from the Class), Class Members purchased a substantial amount of stock and warrants during the Class Period.  Thus, the Class easily consists of more than 40 members and numerosity is satisfied.  *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (numerosity "may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period").

*Second*, because the Class's claims arise from the same alleged misstatements and omissions and rely on the same theories of liability, questions of law and fact are common to the Class.  *See Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012) ("[c]ommon questions of law and fact are present where, as here, the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public"); *Advanced Battery*, 298 F.R.D. at 181 ("Securities-fraud cases generally meet Rule 23(a)(2)'s commonality requirement.").  The facts here raise common questions as to whether: (1) Defendants violated the Securities Act or Exchange Act; (2) Defendants' statements misrepresented or omitted material facts; (3) Defendants acted knowingly or recklessly under the Exchange Act; and (4) investors suffered damages as a result of the alleged misconduct.  These common questions readily establish commonality.  *See In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2017 WL 2062985, at *2 (S.D.N.Y. May 15, 2017) (commonality satisfied in securities

---

[8]    *See* Triterras Form 20-F (for fiscal year ended February 28, 2021), dated March 7, 2022, Ex. 2.5 (Description of Securities) at 1 (available at https://ir.triterras.com/sec-filings/all-sec-filings/content/0001564590-22-008862/0001564590-22-008862.pdf).

- 23 -

case involving similar questions).

*Third*, Plaintiffs' claims are typical of the Class's because they share the same factual and legal underpinnings. *See In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 281 F.R.D. 134, 139 (S.D.N.Y. 2012) ("[i]n a securities class action . . . the claims and nature of evidence are generally considered sufficient to satisfy the typicality requirement").

*Fourth*, Plaintiffs are adequate class representatives because their interest are aligned with, and not antagonistic to, those of other Class Members, and Lead Counsel is "qualified, experienced and able to conduct the litigation." *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Plaintiffs purchased their securities at market prices during the Class Period and were allegedly injured by the same material misrepresentations and omissions and subsequent stock price declines that injured all Class Members. They also "actively supervised and monitored the progress of this [L]itigation . . . ." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 100 (S.D.N.Y. 2015).

Additionally, the requirements of Rule 23(b)(3) are satisfied as common questions of law and fact predominate over individual ones and class treatment is superior to separate and disjointed individual adjudications. Because the elements of Plaintiffs' claims present common questions of law and fact that predominate over individualized ones, the predominance requirement is "readily met" here. *See Billhofer*, 281 F.R.D. at 158. Superiority is also readily met because adjudicating individual claims would significantly waste judicial resources. Plaintiffs are unaware of any other related litigation, and no management difficulties preclude this Action from being maintained as class action for settlement purposes.

Accordingly, class certification is appropriate here for purposes of the Settlement.

4861-8593-6415.v1

## VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

If the Court grants preliminary approval of the proposed Settlement, Plaintiffs respectfully request approval of the schedule attached hereto as Appendix A for the Court's review.

## VII.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order which will provide for: (i) preliminary approval of the Settlement; (ii) approval of the proposed form and manner of providing notice to the Class; (iii) certification of the Class for settlement purposes; and (iv) a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

DATED:  May 13, 2022

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
JOSEPH RUSSELLO

_s/ Joseph Russello_
JOSEPH RUSSELLO

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
jrussello@rgrdlaw.com

_Lead Counsel for Plaintiffs_

LEVI & KORSINSKY, LLP
MARK S. REICH
55 Broadway, 10th Floor
New York, NY  10006
Telephone:  212/363-7500
212/363-7171 (fax)
mreich@zlk.com

_Additional Counsel for Plaintiff Norris_

- 25 -

4861-8593-6415.v1

# APPENDIX A

**APPENDIX A**

| EVENT | TIME FOR COMPLIANCE |
|---|---|
| Deadline to commence mailing the Notice and Proof of Claim ("Notice Date") | 10 business days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice in *The Wall Street Journal* and over a national newswire service | 14 calendar days after the Notice Date |
| Posting and filing of Plaintiffs' motion for final approval of the Settlement and Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses, and awards to Plaintiffs | 35 calendar days before the Settlement Hearing |
| Deadline for opting out or submitting an objection | 21 calendar days before the Settlement Hearing |
| Deadline for filing Proofs of Claim | 90 calendar days after the Notice Date |
| Posting and filing of Plaintiffs' reply in further support of final approval of the Settlement and Plan of Allocation, and in support of Lead Counsel's application for an award of attorneys' fees and expenses, and awards to Plaintiffs | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | At least 100 calendar days after entry of the Preliminary Approval Order, at the Court's convenience |

4861-8593-6415.v1