UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | x | |
| JOHN A. ERLANDSON and JAMES IAN NORRIS, Individually and on Behalf of All Others Similarly Situated, | : : : : | Civil Action No. 7:20-cv-10795-CS CLASS ACTION |
| Plaintiff, | : : : | MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND |
| vs. | : : | APPROVAL OF THE PLAN OF ALLOCATION AND FOR AN AWARD OF |
| TRITERRAS, INC. (f/k/a NETFIN HOLDCO), NETFIN ACQUISITION CORP., TRITERRAS FINTECH PTE. LTD., MVR NETFIN LLC, RICHARD MAURER, MARAT ROSENBERG, VADIM KOMISSAROV, GERALD PASCALE, SRINIVAS KONERU, JAMES H. GROH, ALVIN TAN, JOHN A. GALANI, MATTHEW RICHARDS, VANESSA SLOWEY and KENNETH STRATTON, | : : : : : : : : : : : : | ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFFS PURSUANT TO 15 U.S.C. §77z-1(a)(4) |
| Defendants. | : : | |
| | x | |

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.............................................3

III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
        SETTLEMENTS..........................................................................................................4

        A.      The Law Favors and Encourages Settlements ............................................4

        B.      The Settlement Must Be Procedurally and Substantively Fair, Adequate,
                and Reasonable ..............................................................................................4

        C.      The Proposed Settlement Is Procedurally and Substantively Fair,
                Adequate, and Reasonable ............................................................................5

                1.      The Settlement Satisfies the Requirements of Rule 23(e)(2).......................5

                        a.      The Class Was Ably and Adequately Represented and the
                                Proposed Settlement Was Negotiated at Arm's Length .................6

                        b.      The Proposed Settlement Is Adequate in Light of the Costs,
                                Risks, and Delays of Trial and Appeal ...........................................7

                        c.      The Proposed Method for Distributing Relief Is Effective..............8

                        d.      Attorneys' Fees .................................................................................9

                        e.      The Parties Have No Other Agreements Except for a
                                Standard Supplemental Agreement...................................................9

                        f.      Class Members Are Treated Equitably ..........................................10

                2.      The Settlement Satisfies the Remaining *Grinnell* Factors.........................10

                        a.      The Lack of Objections to Date Supports Final Approval ............10

                        b.      Plaintiffs Had Sufficient Information to Resolve the Case............10

                        c.      Maintaining Class Action Status Through Trial Presents
                                Substantial Risk ............................................................................11

                        d.      Defendants' Ability to Withstand a Greater Judgment..................11

                        e.      The Settlement Amount Is Reasonable in View of the Best
                                Possible Recovery and the Risks of Litigation ..............................12

4884-0388-5611.v1

**Page**

IV.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE ........................................13

V.     THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES
       OF EFFECTUATING THE SETTLEMENT ...................................................................13

VI.    NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23
       AND DUE PROCESS ..................................................................................................14

VII.   AWARD OF ATTORNEYS' FEES...............................................................................16

       A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses
             from the Common Fund Achieved in the Settlement .............................................16

       B.    The Court Should Award a Reasonable Percentage of the Common Fund...........16

       C.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-
             the-Fund Method....................................................................................................17

       D.    The Relevant Factors Confirm that the Requested Fee Is Reasonable ..................18

             1.    The Time and Labor Expended by Counsel ...............................................18

             2.    The Magnitude and Complexity of the Litigation .....................................19

             3.    The Risks of the Litigation Support the Requested Fee ............................19

             4.    The Quality of Representation and Public Policy Support the
                   Requested Fee .........................................................................................20

             5.    Plaintiffs' Approval and the Class's Reaction to Date Support the
                   Requested Fee .........................................................................................21

       E.    Lead Counsel's Fee Request Is Also Reasonable Under a Lodestar Cross-
             Check ....................................................................................................................22

VIII.  LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND
       NECESSARY TO THE PROSECUTION OF THIS LITIGATION.................................23

IX.    PLAINTIFFS SHOULD RECEIVE A REASONABLE AWARD PURSUANT
       TO 15 U.S.C. §77z-1(a)(4) .........................................................................................23

X.     CONCLUSION..............................................................................................................24

- ii -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aponte v. Comprehensive Health Mgmt.*,
2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013).........................................................................18

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010).......................................................................10

*Blum v. Stenson*,
465 U.S. 886 (1984)......................................................................................................16, 17

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)................................................................................................................16

*Camden I Condo. Ass'n v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) .............................................................................................17

*Castagna v. Madison Square Garden, L.P.*,
2011 WL 2208614 (S.D.N.Y. June 7, 2011) ......................................................................11

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992).......................................................................................11

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)................................................................15, 24

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......................................................................16

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011).................................................................................22

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)........................................................................................ *passim*

*Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d Cir. 2000)......................................................................................... *passim*

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) ...............................................................................................17

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) ...............................................................................................17

4884-0388-5611.v1

**Page**

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc., et al.*,
   No. 1:18-cv-00299-AJN, slip op. (S.D.N.Y. Feb. 14, 2022) ....................................................18

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) .............................................................................4, 8, 11, 13

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984),
   *aff'd*, 818 F.2d 145 (2d Cir. 1987)....................................................................................12

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)...........................................................................12

*In re AT&T Corp. Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006)................................................................................................17

*In re Bear Stearns Cos.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)...................................................................................10

*In re BHP Billiton Ltd. Sec. Litig.*,
   2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019)........................................................................22

*In re China Sunergy Sec. Litig.*,
   2011 WL 1899715 (S.D.N.Y. May 13, 2011) .......................................................................23

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   2019 WL 2554232 (N.D. Cal. May 3, 2019) ..........................................................................5

*In re Comverse Tech., Inc. Sec. Litig.*,
   2010 WL 2653354 (E.D.N.Y. June 24, 2010) .................................................................16, 19

*In re Deutsche Bank AG Sec. Litig.*,
   No 1:09-cv-01714-GHW-RWL, slip op. (S.D.N.Y. June 11, 2020) ......................................24

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)............................................................... *passim*

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................................5, 12

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ......................................................................10

4884-0388-5611.v1

**Page**

*In re Intercloud Systems, Inc. Sec. Litig.*,
No. 3:14-cv-01982-PGS-DEA, slip op. (D.N.J. Dec. 5, 2017)................................................24

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) .....................................................................................20, 21

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008). Notice................................................................................14

*In re PPDAI Grp. Inc. Sec. Litig.*,
2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ............................................................................18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) .....................................................................................17

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ....................................................................11, 23

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) .............................................................................................19

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)..........................................................................17, 19, 22

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995)......................................................................................................17

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007).....................................................................20, 24

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007).....................................................................10, 13

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005).................................................................................13, 17

*Machniewicz v. Uxin Ltd., et al.*,
No. 1:19-cv-0822-MKB-VMS, slip op. (E.D.N.Y. Sept. 8, 2021).........................................18

*Missouri v. Jenkins*,
491 U.S. 274 (1989)...........................................................................................................17, 22

4884-0388-5611.v1

**Page**

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
  2019 WL 13150344 (S.D.N.Y. Mar. 8, 2019),
  *aff'd as modified sub nom. N.J. Carpenters Health Fund v. NovaStar Mortg., Inc.*,
  28 F.4th 357 (2d Cir. 2022) ...................................................................................................7

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)................................................................................................12

*Panther Partners Inc. v. Jianpu Tech. Inc., et al.*,
  No. 1:18-cv-09848-PGG, slip op. (S.D.N.Y. May 12, 2022) ...................................................18

*Parker v. Time Warner Entm't Co., L.P.*,
  631 F. Supp. 2d 242 (E.D.N.Y. 2009) ..................................................................................20

*Pelzer v. Vassalle*,
  655 Fed. Appx. 352 (6th Cir. 2016)......................................................................................9

*Petrovic v. AMOCO Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) ............................................................................................17

*Rawlings v. Prudential-Bache Props.*,
  9 F.3d 513 (6th Cir. 1993) .................................................................................................17

*Savoie v. Merchs. Bank*,
  166 F.3d 456 (2d Cir. 1999)................................................................................................16

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993)..............................................................................................17

*Thompson v. Metro. Life Ins. Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) ...........................................................................................5

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) .............................................................................................17

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ...........................................................................................17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)......................................................................................... *passim*

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
  2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)..................................................................21, 22

4884-0388-5611.v1

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §77z-1(a)(4) ....................................................................................................1, 3, 23
    §77z-1(a)(6) ............................................................................................................17
    §77z-1(a)(7) ............................................................................................................15

Federal Rules of Civil Procedure
    Rule 23 ...................................................................................................................14
    Rule 23(a)..........................................................................................................13, 14
    Rule 23(b)(3)......................................................................................................13, 14
    Rule 23(c)................................................................................................................11
    Rule 23(c)(2)(B)......................................................................................................14
    Rule 23(e).................................................................................................................1
    Rule 23(e)(1)(B)......................................................................................................14
    Rule 23(e)(2) .................................................................................................1, 4, 5, 6
    Rule 23(e)(2)(A)-(B)................................................................................................4
    Rule 23(e)(2)(C)......................................................................................................4
    Rule 23(e)(2)(C)(i)...................................................................................................7
    Rule 23(e)(2)(C)(ii)..................................................................................................8
    Rule 23(e)(2)(C)(iii).................................................................................................9
    Rule 23(e)(2)(C)(iv).................................................................................................9
    Rule 23(e)(2)(D) ..................................................................................................4, 10
    Rule 23(e)(3)........................................................................................................4, 9

**SECONDARY AUTHORITIES**

Janeen McIntosh and Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*
    NERA Economic Consulting (Jan. 25, 2022)..........................................................12

4884-0388-5611.v1

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff John A. Erlandson and plaintiff James Ian Norris ("Plaintiffs") respectfully submit this memorandum of law in support of their motion for approval of: (1) the $9 million all-cash Settlement; (2) the proposed Plan of Allocation; (3) Lead Counsel's application for an award of attorneys' fees and expenses; and (4) Plaintiffs' applications for awards of $10,000 each, pursuant to 15 U.S.C. §77z-1(a)(4).[1]

## I.    PRELIMINARY STATEMENT

The proposed $9 million recovery is the product of an effective, and efficient, litigation strategy involving the novel application of the securities laws to those who brought Triterras, Inc. ("Triterras") public in a transaction with a special purpose acquisition company ("SPAC"). The claims were particularly challenging as the alleged misstatements and omissions touched on already public facts, namely preexisting relationships between Defendants, Triterras's reliance on related-party Rhodium Resources, and the condition of the trade finance market. Further complicating matters, Triterras, which is based in Singapore, was in turmoil and on the cusp of having its securities delisted. Lead Counsel was nevertheless able to achieve a Settlement that recovers a significant percentage of estimated damages. The Settlement is favorable to the Class and satisfies each factor set forth in Rule 23(e)(2) and *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Lead Counsel developed a firm understanding of the strengths and weaknesses of this case through extended, arm's-length settlement negotiations overseen by a nationally-recognized neutral, Jed D. Melnick, Esq. of JAMS. Lead Counsel engaged in an extensive factual investigation and

---

[1]    All capitalized terms not otherwise defined herein have the meanings set forth in the Stipulation and Agreement of Settlement ("Stipulation") (ECF 57) and the Declaration of Joseph Russello in Support of Plaintiffs' Motion for Final Approval of Settlement and Approval of the Plan of Allocation and for an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4) ("Russello Decl."), submitted herewith. All emphasis is added and internal citations are omitted, unless otherwise stated.

- 1 -

analysis before and after filing the Amended Complaint and prepared detailed mediation statements addressing issues of liability and damages.  Lead Counsel also consulted with a financial consultant, which provided an even stronger understanding of the merits of Plaintiffs' claims.  The result was a "mediator's proposal" to resolve the litigation for $9 million, which the parties eventually accepted.

Members of the Class have reacted positively to the Settlement.  Pursuant to the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), dated May 20, 2022 (ECF 60), copies of the Notice were sent to over 40,000 potential Class Members and nominees beginning on June 3, 2022, and notice was published in *The Wall Street Journal* and transmitted over *Business Wire* on June 17, 2022.  *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶4-12, submitted herewith.  Notice was also provided via a website created for the Settlement.  *Id*., ¶14.  To date, not a single objection to the Settlement has been submitted and no requests for exclusion from the Class have been received.  *Id.*, ¶16.

Plaintiffs also request that the Court approve the proposed Plan of Allocation ("Plan"), set forth in the Notice, which governs how claims will be calculated and Settlement proceeds will be distributed.  The Plan was prepared in consultation with Plaintiffs' damages consultant and the Claims Administrator, Gilardi & Co. LLC ("Gilardi"), and is based on the difference between what Class Members paid for their Triterras securities during the Class Period and what they would have paid had the alleged misstatements not been made or the omitted information been disclosed.  Under the Plan, Authorized Claimants will receive their *pro rata* share of the Net Settlement Fund based on their recognized losses.

Lead Counsel, which has substantial experience prosecuting securities class actions, has concluded that the Settlement is fair, reasonable, and adequate and in the best interests of the Class,

4884-0388-5611.v1

and Plaintiffs agree.[2]  Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement and approve the Plan of Allocation as fair and reasonable.

Lead Counsel also respectfully requests an award of attorneys' fees of one-third of the Settlement Amount, and $38,872.83 in expenses and charges reasonably and necessarily incurred in the Litigation, plus interest on both amounts.  This request has the full support of Plaintiffs[3] and is within the range of percentages awarded in class actions in this District and across the country. Pursuant to 15 U.S.C. §77z-1(a)(4), Plaintiffs also seek awards in the amount of $10,000 each for their efforts in representing the Class.  As explained below, the factors articulated in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), support these awards.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Plaintiffs respectfully refer the Court to the accompanying Russello Declaration for a detailed discussion of the factual background and procedural history of the Litigation, the efforts undertaken by Plaintiffs and their counsel during the course of the Litigation, the risks of continued litigation, and a discussion of the negotiations leading to the Settlement. Russello Decl., ¶¶14-54.

---

[2]      *See* Declaration of John A. Erlandson in Support of Plaintiffs' Motion for Final Approval of Settlement and Approval of the Plan of Allocation and for an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4) ("Erlandson Decl."), ¶4; Declaration of James Ian Norris in Support of Plaintiffs' Motion for Final Approval of Settlement and Approval of the Plan of Allocation and for an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4) ("Norris Decl."), ¶4, filed herewith.

[3]      *See* Erlandson Decl., ¶5; Norris Decl., ¶5.

- 3 -

## III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.    The Law Favors and Encourages Settlements

"The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014).  Therefore, when exercising discretion to approve a settlement, courts are "mindful of the strong judicial policy in favor of settlements." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  Thus, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462.

### B.    The Settlement Must Be Procedurally and Substantively Fair, Adequate, and Reasonable

Rule 23(e)(2) sets forth the relevant factors as to whether a settlement "is fair, reasonable, and adequate . . . ."  These factors include whether "the class representatives and class counsel have adequately represented the class" and "the [settlement] proposal was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2)(A)-(B).  They also require a court to determine whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3) . . . ."  Fed. R. Civ. P. 23(e)(2)(C).  Finally, a court will consider whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).

The *Grinnell* factors, some of which overlap with Rule 23(e)(2)'s factors, also guide a court's

4884-0388-5611.v1

consideration of whether to approve a class action settlement. They concern:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *Grinnell*, 495 F.2d at 463).

In finding that a settlement is fair, reasonable, and adequate, a court need not find that every factor is satisfied but "should consider the[ir] totality" in light of the circumstances. *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003). In making that determination, a court may not substitute its "business judgment for that of counsel, absent evidence of fraud or overreaching." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004). Here, Plaintiffs respectfully submit that the proposed Settlement fully satisfies Rule 23(e)(2) and all of the *Grinnell* factors and is therefore fair, reasonable, and adequate.

###### C.    The Proposed Settlement Is Procedurally and Substantively Fair, Adequate, and Reasonable

####### 1.    The Settlement Satisfies the Requirements of Rule 23(e)(2)

As Plaintiffs previously established in securing preliminary approval (ECF 59 at 9-15), the Settlement meets all of the requirements imposed by Rule 23(e)(2). That nothing has changed since preliminary approval "counsel[s] equally in favor of final approval now." *See In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019).

4884-0388-5611.v1

### a.    The Class Was Ably and Adequately Represented and the Proposed Settlement Was Negotiated at Arm's Length

The first two factors of Rule 23(e)(2) are satisfied because Plaintiffs and Lead Counsel adequately represented the Class and negotiated the Settlement at arm's length. The Settlement is the product of a thorough factual investigation and effective litigation and negotiation strategy, bolstered by an extensive analysis of damages and an understanding of the strengths and weaknesses of the claims. Russello Decl., ¶¶17-18, 21-27, 33-36. Lead Counsel conducted an extensive factual investigation and analysis that involved a review of relevant SEC filings, news reports, and other information, such as U.S. and Singapore corporate filings. *Id.*, ¶33. Lead Counsel also identified a number of witnesses with relevant information and worked with a financial consultant. *Id.* Lead Counsel evaluated this information and was able to negotiate the all-cash, $9 million Settlement, an early resolution which fairly values the claims and provides an immediate benefit to Class Members.

The Settlement is the result of extensive, arm's-length negotiations with no hint of collusion. The parties engaged Mr. Melnick of JAMS, an experienced securities class action mediator. *Id.*, ¶¶22-27. As the Stipulation confirms, Defendants are represented by experienced and respected law firms: Cahill Gordon & Reindel LLP, Duane Morris LLP, White & Case LLP, and DLA Piper LLP (US). These firms engaged in skillful negotiation on every term of the Settlement over an extended period, facilitated by Mr. Melnick. *Id.* During this process, Plaintiffs developed a firm understanding of the strengths and weaknesses of their case and extensively consulted their outside financial consultant. *Id.*, ¶¶33-36. Eventually, the mediator proposed a settlement that was accepted by all parties.[4]

---

[4]    Negotiations concerning the contours of the Settlement continued for months with the signing of the Memorandum of Understanding on January 22, 2022, and months of additional negotiations before the parties could agree on the terms of the binding Stipulation. Russello Decl., ¶¶22-27.

4884-0388-5611.v1

The nature of this process provides compelling evidence that the Settlement is not a product of collusion and gives rise to a strong presumption of fairness. *See Wal-Mart*, 396 F.3d at 116; *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 2019 WL 13150344, at \*2 (S.D.N.Y. Mar. 8, 2019), *aff'd as modified sub nom. N.J. Carpenters Health Fund v. NovaStar Mortg., Inc.*, 28 F.4th 357 (2d Cir. 2022) (participation in mediation is evidence of arm's-length negotiations).

### b.      The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delays of Trial and Appeal

Rule 23(e)(2)(C)(i) and the first, fourth, and fifth *Grinnell* factors concern the substantive adequacy of the Settlement. Rule 23(e)(2)(C)(i) advises courts to consider "the costs, risks and delay of trial and appeal," while the relevant *Grinnell* factors overlap and address the risks of establishing liability and damages. Securities class actions present numerous hurdles and are "notably difficult and notoriously uncertain." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*15 (S.D.N.Y. Nov. 8, 2010). Here, service was outstanding on many Defendants based abroad or difficult to locate; Defendants had varied and formidable dismissal arguments; discovery was automatically stayed; and the Class had yet to be certified. Russello Decl., ¶¶6, 37-46.

Though Plaintiffs remained confident in their claims, this case entailed more complexity and risk because it alleged claims under the Securities Act and Exchange Act related to Triterras's de-SPAC transaction, involving arguably novel theories of liability that could be difficult to prove.[5] Defendants undoubtedly would have contested scienter (implicating a heightened pleading standard), claimed that much of the allegedly undisclosed information was discernible from public sources, and argued that they appropriately complied with any disclosure obligations. *Id.*, ¶41. Indeed, Triterras

---

[5]      The SEC recently announced the need for improved regulation of disclosure in such transactions.

4884-0388-5611.v1

did not revise its disclosures after an internal investigation and outside audit, and the SEC has not taken any action against any Defendants arising out of Plaintiffs' claims (or otherwise). *Id.*

Discovery would also be complex, with an international dimension permeating every aspect. Triterras is a Cayman Islands company based in Singapore. *Id.*, ¶¶48,49,51. Certain Defendants and key witnesses are located there and elsewhere abroad. *Id.* Discovery proceedings, and the nature of permissible discovery, thus could have depended on the law in those foreign jurisdictions. There also was no guarantee that Plaintiffs could establish, even after discovery, the materiality of certain alleged nondisclosures or show that additional disclosure – beyond that already in the public realm – was, in fact, legally required.

Plaintiffs also faced risks in overcoming Defendants' negative causation affirmative defense under the Securities Act and also establishing loss causation and damages under the Exchange Act. Defendants would have presented expert opinions criticizing Plaintiffs' damages methodology and argued that damages are zero or, at best, significantly less than Plaintiffs had estimated. *Id.*, ¶¶43-46. These issues would likely have come down to an unpredictable and hotly disputed "battle of the experts." *Id.*, ¶45. Continued litigation thus posed a serious risk to the Class's ability to recover.

The complexity, cost, and duration of continued litigation would also be considerable here. *See Advanced Battery*, 298 F.R.D. at 175 ("the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement"). A prolonged period of pretrial proceedings and an uncertain trial and appeals process would not serve the interests of the Class as compared to the more immediate benefits of the Settlement, which offers a guaranteed recovery.

### c.      The Proposed Method for Distributing Relief Is Effective

With respect to Rule 23(e)(2)(C)(ii), Plaintiffs and Lead Counsel have taken customary steps to ensure that the Class is notified about the Settlement. More than 40,000 copies of the Notice and

4884-0388-5611.v1

Proof of Claim were mailed and the Summary Notice was published.  Murray Decl., ¶¶4-12.  The claims process is similar to that commonly used in securities class action settlements, and provides for straightforward cash payments based on trading information provided.  Although Class Members have until August 16, 2022 to object to the Settlement or request exclusion from the Class, no Class Members have thus far objected or requested exclusion.  Russello Decl., ¶13.

### d.    Attorneys' Fees

Rule 23(e)(2)(C)(iii) covers "the terms of any proposed award of attorney's fees, including timing of payment."  Consistent with the Notice, and as discussed further below, Lead Counsel seeks an award of attorneys' fees in the amount of one-third of the Settlement Amount and expenses and charges in an amount of $38,872.83, plus interest on both amounts.  The Notice explains that any awarded fees and expenses shall be paid to Lead Counsel "after the Court executes the Judgment and an order awarding such fees and expenses. . . ."  Stipulation, ¶6.2  *See Pelzer v. Vassalle*, 655 Fed. Appx. 352, 365 (6th Cir. 2016) (approving a similar provision because it "does not harm the class members in any discernible way").

### e.    The Parties Have No Other Agreements Except for a Standard Supplemental Agreement

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement covered by Rule 23(e)(3), which requires "a statement identifying any agreement made in connection with the proposal."  As Plaintiffs disclosed when seeking preliminary approval, the parties have a standard supplemental agreement which allows Defendants to terminate the Stipulation if Class Members with a certain aggregate amount of Recognized Claims opt out of the Settlement.[6]

---

[6]    Upon request, Plaintiffs will provide a copy of the supplemental agreement to the Court for *in camera* review.

4884-0388-5611.v1

### f.        Class Members Are Treated Equitably

Finally, Rule 23(e)(2)(D) concerns whether class members are treated equitably. The Settlement is designed to do precisely that. The Plan treats Class Members equitably relative to each other, based on the timing of their securities purchases, acquisitions and sales, and by providing that each Authorized Claimant shall receive his, her or its *pro rata* share of the Net Settlement Fund based on their recognized losses. In this way, all Class Members are situated and treated similarly.

### 2.        The Settlement Satisfies the Remaining *Grinnell* Factors

### a.        The Lack of Objections to Date Supports Final Approval

The reaction of the Class to the Settlement is "perhaps the most significant" indicator of its adequacy. *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007). "A favorable reception by the class constitutes strong evidence of the fairness of a proposed settlement and supports judicial approval." *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *3 (S.D.N.Y. Aug. 6, 2010). To date, no Class Member has objected to the Settlement or requested exclusion from the Class. The positive reaction of the Class further supports approval of the Settlement.

### b.        Plaintiffs Had Sufficient Information to Resolve the Case

To support approval of a settlement, the parties must have been able to "intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). "To satisfy this factor," however, "formal or extensive discovery" is not required. *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *7 (S.D.N.Y. Dec. 19, 2014). Here, Plaintiffs had sufficient information to make an informed decision on the Settlement. As discussed above, Lead Counsel conducted an extensive investigation which began even before the Court appointed Mr. Erlandson as Lead Plaintiff and continued as settlement negotiations took

- 10 -

4884-0388-5611.v1

place.  Russello Decl., ¶¶7, 16.  Mr. Melnick also provided a candid, meaningful assessment of the strengths and weaknesses of the claims and defenses throughout the mediation and negotiation process.  *Id.*, ¶35.  Thus, Plaintiffs and Lead Counsel were "knowledgeable with respect to possible outcomes and risks" and well-equipped "to recommend the Settlement."  *See Advanced Battery*, 298 F.R.D. at 177.

### c.    Maintaining Class Action Status Through Trial Presents Substantial Risk

While Plaintiffs believe they would prevail on a motion to certify the Class, Defendants were poised to vigorously litigate that issue.  Even if they lost, Defendants may have filed a Rule 23(f) petition or moved to decertify the Class or shorten the Class Period, presenting additional risk to a favorable outcome for the Class.  *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992); *see also* Fed. R. Civ. P. 23(c) (authorizing decertification at any time).

### d.    Defendants' Ability to Withstand a Greater Judgment

A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *7 (S.D.N.Y. June 7, 2011).   Nevertheless, here, there was no assurance that Defendants could withstand a greater judgment or that Plaintiffs could enforce a judgment after trial, years from now.  Triterras and several Defendants are located abroad, ostensibly without assets in the U.S.  Triterras's business was negatively impacted by the COVID-19 pandemic and other issues, and its securities have since been de-listed.  Russello Decl., ¶¶6, 51.  These adverse developments favor approval.  *See In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *12 (S.D.N.Y. July 21, 2020) (noting risk where company's financial condition "gr[ew] worse since the COVID-19 outbreak").  But even if Defendants could satisfy – and Plaintiffs could enforce – a larger judgment, all other factors support final approval.

4884-0388-5611.v1

###### e.    The Settlement Amount Is Reasonable in View of the Best Possible Recovery and the Risks of Litigation

The last two *Grinnell* factors are also satisfied here.  The adequacy of the settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  For this reason, a settlement need only fall within a "range of reasonableness" which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Here, the $9 million Settlement is a substantial result for the Class.  As explained previously, (ECF 59 at 19), Plaintiffs estimate reasonably recoverable damages of between $80 million and $130 million depending on various scenarios, but damages realistically fall on the lower end.  Thus, the Settlement represents a recovery of approximately 6.9% to 11.3%, which far exceeds the median recovery of 1.8% in securities class actions settled in 2021.  Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, NERA Economic Consulting (Jan. 25, 2022) ("NERA Study"), Fig. 22 at 24.

This is a particularly good result given the unique legal and factual issues involved here.  *See Global Crossing*, 225 F.R.D. at 461 (noting "'that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate'") (quoting *Grinnell*, 495 F.2d at 455).  In these circumstances, offering relief to the Class now, rather than a speculative payment possibly years later, undoubtedly favors the Class. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (noting "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

- 12 -

## IV.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

The standard for approving the Plan is the same as for approving the Settlement as a whole: "it must be fair and adequate." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "When formulated by competent and experienced class counsel," a plan "need have only a reasonable, rational basis." *Advanced Battery*, 298 F.R.D. at 180. Here, the Plan (set forth in the Notice) was prepared with the assistance of Plaintiffs' damages consultant and Claims Administrator and is based on the same methodology underlying Plaintiffs' damages, *i.e.*, the amount of artificial inflation in the price of Triterras securities during the Class Period due to the alleged misstatements and omissions. It is a fair means to apportion the Net Settlement Fund among Authorized Claimants based on, and consistent with, the claims alleged. *See* Russello Decl., ¶¶55-58.

The Net Settlement Fund will be distributed to Authorized Claimants, *i.e.*, Class Members who submit timely and valid Proofs of Claim and Release that are approved for payment from the Net Settlement Fund. The Plan treats all Class Members, including Plaintiffs Erlandson and Norris, in a similar manner: everyone who does not request exclusion and whose submission is valid and timely will receive a *pro rata* share of the Net Settlement Fund in the proportion that the Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants (so long as payment is $10 or more, as is customary). Accordingly, the Plan is fair and reasonable – a conclusion supported by the complete absence of objections to date. *See Veeco*, 2007 WL 4115809, at *7.

## V.    THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

In the Preliminary Approval Order, the Court found that Plaintiffs had met the requirements to certify the Class under Rules 23(a) and 23(b)(3) and preliminarily certified the following Class for settlement purposes:

- 13 -

4884-0388-5611.v1

> All Persons who purchased or otherwise acquired Triterras Class A common stock or warrants from June 29, 2020 to and including January 14, 2021. Excluded from the Class are Defendants and their families, officers, affiliates, entities in which they have or had a controlling interest, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded party. Also excluded from the Class are Persons who timely and validly request exclusion from the Class pursuant to the requirements described below and in the Notice of Pendency and Proposed Settlement of Class Action ("Notice") to be sent to Class Members pursuant to this Order.

ECF 60, ¶¶2-3. In addition, the Court preliminarily certified Plaintiffs as Class representatives and Lead Counsel as Class counsel. *Id.*, ¶5. Since entry of the Preliminary Approval Order, nothing has occurred that would alter the reasonableness of those rulings. Thus, for all the reasons stated in the preliminary approval brief (incorporated herein by reference), Plaintiffs respectfully request that the Court affirm its preliminary certification, finally certify the Class under Rules 23(a) and 23(b)(3) for purposes of effectuating the Settlement, appoint Plaintiffs as Class representatives, and designate Lead Counsel as Class counsel.

## VI.    NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

At the preliminary approval stage, Plaintiffs established that the Notice comports with Rule 23 and settled law. Specifically, Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" (Fed. R. Civ. P. 23(c)(2)(B)), and that it be directed to class members in a "reasonable manner." Fed. R. Civ. P. 23(e)(1)(B). "Notice need not be perfect" or received by every class member, but must instead be reasonable under the circumstances. *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008). Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *Id.*

- 14 -

The Notice and the means used to disseminate it to potential Class Members readily satisfy these standards. Spanning twelve pages, the Notice apprises Class Members of all of the information they would need to decide whether to participate in the Settlement. It describes: (1) the Litigation and the Class's claims; (2) the terms of the Settlement; (3) the proposed Plan; (4) the right to request exclusion from the Class or object to any aspect of the Settlement, the Plan, or the requested awards, and the procedure by which to do so; (5) the scope of the release and binding effect of a judgment; (6) Lead Counsel's application for an award of attorneys' fees and expenses and Plaintiffs' requested awards; and (7) the date, time, and place of the Settlement Hearing. *See* Murray Decl., Ex. A (Notice). The Notice also directs Class Members to the Claims Administrator, Lead Counsel, and the Settlement website for further information. And the Notice contains the information required by the PSLRA. *See* 15 U.S.C. §77z-1(a)(7).

In accordance with the Preliminary Approval Order, Gilardi, as the Claims Administrator, commenced mailing the Notice and Proof of Claim and Release by first-class mail to potential Class Members, brokers, and nominees on June 3, 2022. Murray Decl., ¶¶5-6. Gilardi also published the Summary Notice in *The Wall Street Journal* and transmitted it over *Business Wire* on June 17, 2022. *Id.*, ¶12. Additionally, Gilardi posted the Notice and other Settlement-related materials, including the Stipulation, on the Settlement website, which also allows for the electronic submission of claims. *Id.*, ¶14. These methods of notice are common in securities class actions. *See, e.g.*, *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *16 (S.D.N.Y. Oct. 16, 2019) (approving similar means of disseminating notice).

## VII.   AWARD OF ATTORNEYS' FEES

### A.   Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund Achieved in the Settlement

The Supreme Court has long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Goldberger*, 209 F.3d at 47.  Such awards are important and serve a salutary purpose because they "encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons" and "discourage future alleged misconduct of a similar nature." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *10-*11 (S.D.N.Y. May 9, 2014).

### B.   The Court Should Award a Reasonable Percentage of the Common Fund

The Supreme Court has indicated that attorneys' fees in common-fund cases generally should be based on a percentage of the fund.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (noting "a reasonable fee is based on a percentage of the fund bestowed on the class").  The Second Circuit has approved the percentage method, recognizing that the lodestar method, although acceptable, "proved vexing" and resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-50; *see also Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (noting the percentage method "has been deemed a solution to certain problems that may arise when the lodestar method is used").  In fact, the Second Circuit has acknowledged that the "trend in this Circuit is toward the percentage method." *Wal-Mart*, 396 F.3d at 121; *accord In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *2 (E.D.N.Y. June 24, 2010).

- 16 -

Importantly, all Courts of Appeal to consider the matter have approved use of the percentage method, with two circuits ***requiring*** its use in common-fund cases.[7]  The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class.  15 U.S.C. §77z-1(a)(6).  Several courts have concluded that Congress, in using this language, expressed a preference for the percentage method when determining attorneys' fees in securities class actions.  *See, e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008); *WorldCom*, 388 F. Supp. 2d at 355.

### C.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

An appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace.  *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989).  If this were a non-class action, the customary fee arrangement would be contingent and in the range of one-third of the recovery.  *See Blum*, 465 U.S. at 904 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).

The requested one-third fee is well within the range of percentage fees awarded by other courts in this Circuit in comparable securities and antitrust cases.  *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("it is

---

[7]    *See In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305-07 (1st Cir. 1995); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-17 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993).  The Eleventh and District of Columbia Circuits have required the use of the percentage method in common fund cases.  *See Camden*, 946 F.2d at 774; *Swedish Hosp.*, 1 F.3d at 1271.

- 17 -

4884-0388-5611.v1

very common to see 33% contingency fees in cases with funds of less than $10 million"). *See also Panther Partners Inc. v. Jianpu Tech. Inc., et al.*, No. 1:18-cv-09848-PGG, ECF 130 (S.D.N.Y. May 12, 2022) (awarding one-third of $7.5 million settlement); *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc., et al.*, No. 1:18-cv-00299-AJN, ECF 230 (S.D.N.Y. Feb. 14, 2022) (awarding one-third of $18 million settlement); *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *16-*17 (E.D.N.Y. Jan. 21, 2022) (noting a one-third fee "constitutes a proportion routinely approved as reasonable"); *Machniewicz v. Uxin Ltd., et al.*, No. 1:19-cv-0822-MKB-VMS, ECF 61 (E.D.N.Y. Sept. 8, 2021) (awarding 33.33% of settlement).

### D.    The Relevant Factors Confirm that the Requested Fee Is Reasonable

When considering whether a request for attorneys' fees in a common-fund or lodestar case is reasonable, a court will consider the *Goldberger* factors:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. These factors support approval of the requested fee.

### 1.    The Time and Labor Expended by Counsel

Lead Counsel has expended substantial time and effort pursuing the Litigation on behalf of the Class for over a year-and-a-half, without receiving any compensation. Russello Decl., ¶¶5-7, 14-27, 33-36, 59-67. It will no doubt expend additional time and resources assisting Class Members with claims, responding to Class Member inquiries, and monitoring the Claims Administrator and claims process. *See Aponte v. Comprehensive Health Mgmt.*, 2013 WL 1364147, at *7 (S.D.N.Y.

4884-0388-5611.v1

Apr. 2, 2013). Lead Counsel's work (over 1,500 hours)[8] in securing the $9 million Settlement, coupled with its continuing commitment, supports the reasonableness of the requested fee.

### 2. The Magnitude and Complexity of the Litigation

Securities actions are "'notably difficult and notoriously uncertain.'" *FLAG Telecom*, 2010 WL 4537550, at *27 (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)). This Litigation was no exception. It raised complex and novel issues applying the federal securities laws to a de-SPAC merger transaction. The unique and complicated nature of this transaction magnified the complexity of the Action and proving liability. Indeed, Plaintiffs faced challenges in proving scienter, loss causation and damages. Likewise, if the Action had proceeded, Plaintiffs would have contended with obtaining discovery in foreign jurisdictions. The magnitude and complexity of this Litigation support fairness and reasonableness of the requested fee.

### 3. The Risks of the Litigation Support the Requested Fee

The risk undertaken in an action is often considered the most important *Goldberger* factor. *See, e.g.*, *Comverse*, 2010 WL 2653354, at *5; *Telik*, 576 F. Supp. 2d at 592. The risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*Grinnell*, 495 F.2d at 470. When considering the reasonableness of attorneys' fees in a contingency action, the Court should consider the risks of the litigation at the time the suit was brought. *See*

---

[8]    *See* accompanying Declaration of Joseph Russello Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("RGRD Declaration"), ¶3.

- 19 -

*Goldberger*, 209 F.3d at 54-55; *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 276 (E.D.N.Y. 2009) (the court should consider "the contingent nature of the expected compensation" and the "risk of non-payment viewed as of the time of the filing of the suit").

Lead Counsel undertook this case on a contingent basis, knowing that the Litigation could last for years and would require substantial attorney time and significant expenses with no guarantee of compensation. Russello Decl., ¶62. Although the case was brought to a successful conclusion, this was far from guaranteed at the outset. This Litigation was a particularly challenging and risky proposition in light of Defendants' use of a de-SPAC merger transaction to bring Triterras public. As just discussed in the previous section, securities actions are "notoriously uncertain" and this was particularly true here, as there was no way to know whether Lead Counsel's theory of liability would be accepted by the Court.

"There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise." *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007). Lead Counsel's assumption of a contingency-fee risk in this case strongly supports the reasonableness of the requested fee. *See FLAG Telecom*, 2010 WL 4537550, at *27 ("the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### 4.    The Quality of Representation and Public Policy Support the Requested Fee

The quality of Lead Counsel's representation is best evidenced by the result achieved. The Settlement represents a recovery that is multiples above the median 1.8% percentage recovery in

- 20 -

4884-0388-5611.v1

securities class actions settled in 2021. NERA Study, Fig. 22 at 24. Here, Lead Counsel demonstrated a great deal of effectiveness in achieving a settlement at this level, at this juncture, in this particular case.

"The high quality of defense counsel opposing Plaintiffs' efforts further provides the caliber of representation that was necessary to achieve the Settlement." *See Marsh*, 265 F.R.D. at 148. Here, defense counsel are four large law firms with a deep bench of securities litigators. They did not and would not settle without serious deliberation.

Finally, strong public policy favors rewarding firms for bringing successful securities actions. *See Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *7 (S.D.N.Y. Aug. 18, 2017) (noting a fee award was "appropriate, and not excessive, to encourage further securities class actions"); *FLAG Telecom*, 2010 WL 4537550, at *29 (recognizing that if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook").

### 5. Plaintiffs' Approval and the Class's Reaction to Date Support the Requested Fee

Plaintiffs were actively involved in prosecuting and resolving this Litigation and approve the requested fee and expense award, which they understand is contingent on this Court's approval. *See* Erlandson Decl., ¶¶3-5; Norris Decl., ¶¶3-5. Additionally, as discussed above, the reaction of the Class to date supports the Settlement as no Class Member has objected to the requested fee award or any aspect of the Settlement. These factors further support the reasonableness of the fee request.

4884-0388-5611.v1

**E.**    **Lead Counsel's Fee Request Is Also Reasonable Under a Lodestar Cross-Check**

To ensure a fee awarded under the percentage-of-the-fund method is reasonable, the Second Circuit encourages courts to cross-check the proposed award against counsel's lodestar. *See Goldberger*, 209 F.3d at 50. In cases like this, fees representing multiples of lodestar between two and five are regularly awarded to reflect contingency-fee risk and other relevant factors. *See, e.g.*, *Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019) (2.7 multiplier); *Salix*, 2017 WL 3579892, at *6 (finding 3.14 lodestar multiplier "within the range of lodestar multipliers approved in this Circuit"); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (awarding fee representing multiplier of 5.3, which was "not atypical" in similar cases); *Telik*, 576 F. Supp. 2d at 590 (noting "lodestar multiples of over 4 are routinely awarded by courts, including this Court").

Here, a lodestar cross-check fully supports the requested fee. Lead Counsel's lawyers and other professionals have spent a total of 1,596 hours on this case, reflecting a lodestar amount of $1,158,033.00 when multiplied by their billing rates. [9] The $3 million in attorneys' fees requested represents a multiplier of 2.59 to Lead Counsel's aggregate lodestar, which is squarely within the range found acceptable by courts in the Second Circuit.

---

[9]    *See* RGRD Declaration, ¶3. Additional counsel at Levi & Korsinsky, LLP have also spent time on this matter. *See* accompanying Declaration of Mark S. Reich Filed on Behalf of Levi & Korsinsky, LLP in Support of Application for Award of Attorneys' Fees and Expenses. Lead Counsel will compensate that firm out of any award the Court approves. The use of current rates is proper since such rates compensate for inflation and the loss of use of funds during the engagement. *See Jenkins*, 491 U.S. at 283-84.

**VIII.  LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS LITIGATION**

Lead Counsel also respectfully requests an award of $38,872.83 in expenses and charges related to this Litigation, plus interest at the same rate as that earned by the Settlement Fund.  Lead Counsel has detailed these relatively modest expenses, which are properly recovered by counsel. *See* RGRD Declaration, ¶¶4-6; *see, e.g.*, *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (noting counsel is compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation"); *FLAG Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."). These expenses cover the damages consultant, mediation, and legal research, were necessarily incurred, and are of a type routinely charged to clients billed by the hour.

**IX.  PLAINTIFFS SHOULD RECEIVE A REASONABLE AWARD PURSUANT TO 15 U.S.C. §77z-1(a)(4)**

Plaintiffs Erlandson and Norris seek awards of $10,000 each for their efforts in representing the Class.  The PSLRA provides an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" to "any representative party serving on behalf of the class."  15 U.S.C. §77z-1(a)(4).  This type of an award "provide[s] an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Signet Jewelers*, 2020 WL 4196468, at *22.

As their declarations demonstrate, Plaintiffs dedicated significant time and attention to this Litigation by reviewing drafts and final versions of case-related documents, reviewing case updates, interacting with counsel, providing trading information, and otherwise consulting on the Litigation and Settlement.  *See* Erlandson Decl., ¶3; Norris Decl., ¶3.  In short, Plaintiffs' involvement on

- 23 -

behalf of the Class advanced the Litigation.  A $10,000 award to each Plaintiff would satisfy the sound policy of ***incentivizing*** investors assist in meritorious securities class actions.  Notably, Class Members received notice of these requested awards and, to date, no objections have been received.

Many courts have approved awards at or above this level.  *See, e.g.*, *In re Deutsche Bank AG Sec. Litig.*, No 1:09-cv-01714-GHW-RWL, ECF 330 (S.D.N.Y. June 11, 2020) (awarding total of $20,000 to two plaintiffs); *Christine Asia*, 2019 WL 5257534, at *1 (approving $12,500 to each of five plaintiffs); *Veeco*, 2007 WL 4115808, at *12 (awarding $15,900 for time spent supervising litigation and characterizing such awards as "routine"); *see also In re Intercloud Systems, Inc. Sec. Litig.*, No. 3:14-cv-01982-PGS-DEA, ECF 135 (D.N.J. Dec. 5, 2017) (awarding $15,400).  A similar award is equally appropriate here.

## X.     CONCLUSION

Based on the foregoing and the entire record, Plaintiffs and Lead Counsel respectfully request that the Court approve: (1) the Settlement and Plan of Allocation; (2) Lead Counsel's request for an award of attorneys' fees of one-third of the Settlement Amount and $38,872.83 in litigation expenses and charges; and (3) awards of $10,000 each to Plaintiffs Erlandson and Norris.

DATED:  August 2, 2022                       Respectfully submitted,

                                             ROBBINS GELLER RUDMAN
                                               & DOWD LLP
                                             SAMUEL H. RUDMAN
                                             JOSEPH RUSSELLO


                                                   *s/ Joseph Russello*
                                             JOSEPH RUSSELLO

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
jrussello@rgrdlaw.com

*Lead Counsel for Plaintiffs*

LEVI & KORSINSKY, LLP
MARK S. REICH
55 Broadway, 10th Floor
New York, NY  10006
Telephone:  212/363-7500
212/363-7171 (fax)
mreich@zlk.com

*Additional Counsel for Plaintiff Norris*

- 25 -

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on August 2, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ Joseph Russello*
JOSEPH RUSSELLO

ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

Email:  jrussello@rgrdlaw.com

# Mailing Information for a Case 7:20-cv-10795-CS Ferraiori v. Triterras, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Landis C. Best**
  lbest@cahill.com,MA@cahill.com

- **Bradley Joseph Bondi**
  bbondi@cahill.com,MA@cahill.com

- **Peggy Senyie Chen**
  pschen@duanemorris.com,managingclerk@ssbb.com,nydocket@duanemorris.com,autodocketny@duanemorris.com

- **Kimberly Anne Havlin**
  kim.havlin@whitecase.com,jdisanti@whitecase.com,mco@whitecase.com

- **Dana B. Klinges**
  dklinges@duanemorris.com,dgartner@duanemorris.com

- **Charles H. Linehan**
  clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- **Gregory Bradley Linkh**
  glinkh@glancylaw.com,info@glancylaw.com,greg-linkh-2000@ecf.pacerpro.com

- **William A. Massa**
  wmassa@rgrdlaw.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Joseph Frank Russello**
  jrussello@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,jrussello@ecf.courtdrive.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)