UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— x

JOHN A. ERLANDSON and JAMES IAN
NORRIS, Individually and on Behalf of All
Others Similarly Situated,

                        Plaintiff,

      vs.

TRITERRAS, INC. (f/k/a NETFIN
HOLDCO), NETFIN ACQUISITION CORP.,
TRITERRAS FINTECH PTE. LTD., MVR
NETFIN LLC, RICHARD MAURER,
MARAT ROSENBERG, VADIM
KOMISSAROV, GERALD PASCALE,
SRINIVAS KONERU, JAMES H. GROH,
ALVIN TAN, JOHN A. GALANI,
MATTHEW RICHARDS, VANESSA
SLOWEY and KENNETH STRATTON,

                     Defendants.

————————————————————— x

:  Civil Action No. 7:20-cv-10795-CS

:  <u>CLASS ACTION</u>

:  DECLARATION OF JOSEPH RUSSELLO
:  IN SUPPORT OF PLAINTIFFS' MOTION
:  FOR FINAL APPROVAL OF SETTLEMENT
:  AND APPROVAL OF THE PLAN OF
:  ALLOCATION AND FOR AN AWARD OF
:  ATTORNEYS' FEES AND EXPENSES AND
:  AWARDS TO PLAINTIFFS PURSUANT TO
:  15 U.S.C. §77z-1(a)(4)

4887-1688-2731.v1

I, JOSEPH RUSSELLO, declare as follows:

1.      I am an attorney duly licensed to practice law in the State of New York and am admitted to practice in this Court.  I am a member of the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), counsel for Lead Plaintiff John A. Erlandson ("Lead Plaintiff"), plaintiff James Ian Norris (collectively, "Plaintiffs"), and the proposed Class.[1]  I have been actively involved in prosecuting and resolving this action ("Action" or "Litigation") and have knowledge of the matters set forth herein.

2.      I respectfully submit this declaration pursuant to Rule 23 of the Federal Rules of Civil Procedure in support of Plaintiffs' motion for final approval of the proposed all-cash settlement of $9,000,000 ("Settlement") and approval of the proposed Plan of Allocation ("Plan"), for an award of attorneys' fees and expenses, and for awards to Plaintiffs pursuant to 15 U.S.C. §77z-1(a)(4) in representing the Class.

## I.      INTRODUCTION AND OVERVIEW

3.      Plaintiffs have achieved a beneficial settlement for the Class based on a targeted and effective litigation and negotiation strategy.  Through their efforts, they developed an understanding of the potential risks of further litigation and achieved a resolution of the Action on favorable terms.  The Settlement – which is now fully funded – provides for the payment of $9,000,000 in cash ("Settlement Amount") for the benefit of the Class in exchange for a release of the Released Claims (as defined in the Stipulation) against the Defendants.  As described herein, the Settlement resulted from extensive arm's-length negotiations facilitated by Jed D. Melnick, Esq., a well-known mediator from JAMS who is experienced in resolving securities class action litigation.

---

[1]      Capitalized terms not defined herein have the meaning ascribed to them in the Stipulation and Agreement of Settlement (ECF 57) ("Stipulation").  Levi & Korsinsky, LLP is additional counsel for plaintiff Norris.

4887-1688-2731.v1

4.      The recovery achieved here is especially favorable in view of the significant risks that the Class might not obtain any recovery at all or a much smaller recovery after years of litigation. The securities claims alleged arise from a merger between Netfin, a publicly traded special purpose acquisition company ("SPAC"), and Fintech, an entity based in Singapore that matches commodities traders and lenders.  The merger formed Triterras, whose securities became publicly traded in the United States.  The allegedly actionable statements and omissions purportedly induced investors to participate in the de-SPAC merger transaction or purchase securities following it.  But the unique nature of the transaction increased the complexity of this Action and complicated the theories of liability.  Even now, the SEC is attempting to strengthen the disclosure framework governing de-SPAC transactions, underscoring the risks and uncertainties of investor litigation arising from those transactions.

5.      The alleged disclosure issues – ranging from prior relationships between individuals and entities participating in the de-SPAC transaction to developments affecting Fintech during the Class Period – complicated estimating damages and also increased the risk of achieving a recovery. To develop a thorough understanding of estimable damages, Plaintiffs worked extensively with a financial consultant experienced in analyzing damages under the Securities Act of 1933 and the Securities Exchange Act of 1934.  These efforts yielded a range of reasonably recoverable damages between $80 million and $130 million, with the lower estimate conservatively reflecting disclosures in January 2021 that partially repeated information already disclosed in December 2020.  Thus, the Settlement Amount represents a recovery of approximately 6.9% to 11.3% of reasonably recoverable damages in this Action – multiples above the average recovery of 1.8% in securities class actions settled in 2021.

4887-1688-2731.v1

6.     Of course, any recovery at trial assumes Plaintiffs could establish liability and defeat any negative causation or loss causation defense Defendants would assert during the Litigation.  It also assumes that Plaintiffs would have prevailed at class certification and summary judgment, and, following trial, on appeal.  But because many of the Defendants are located abroad – including Triterras, a Cayman Islands company based in Singapore – Plaintiffs would face difficulties in conducting discovery and enforcing any eventual judgment.  Worsening developments affecting Triterras and its business also threatened the prospect of any recovery, including the impending de-listing of Triterras securities from the NASDAQ after the Class Period and the impact of the COVID-19 pandemic on international commodities trading and trade finance.  These dynamics elevated the importance of resolving the Litigation without protracted proceedings, if possible to achieve a reasonable and prompt recovery for the Class.

7.     Lead Counsel extensively investigated Plaintiffs' claims before and after preparing the Amended Complaint, which spanned 381 numbered paragraphs over 142 pages, named 12 additional defendants, and asserted claims under both the Securities Act and the Exchange Act over a lengthier Class Period.  After further investigation and evaluation, Plaintiffs believed that mediation, conducted by an experienced mediator, would allow the parties to better assess the risks and benefits of litigation and determine whether an early resolution was possible.  In advance of mediation, each side presented Mr. Melnick with detailed submissions addressing issues of liability and damages and answered questions that Mr. Melnick posed.  Through these efforts and further consultation with their financial consultant and investigators, Lead Counsel and Plaintiffs informed themselves of the strengths and weaknesses of the claims and the range of acceptable recoveries.

8.     After an all-day mediation session and weeks of further negotiation with the mediator, the parties eventually accepted a mediator's proposal to resolve this Action for $9,000,000 in cash.

- 3 -

4887-1688-2731.v1

Reaching agreement on the Settlement documentation took several more months of negotiation, as Lead Counsel continued to monitor developments affecting Triterras and its business.

9. The Settlement provides a substantial and immediate monetary benefit to the Class, reflects the strengths and weaknesses of the claims asserted, and avoids substantial risks to recovery. For these reasons, Lead Counsel and Plaintiffs believe that the Settlement is fair, reasonable and adequate, in the best interests of the Class, and should be approved by this Court.

10. To compensate them for achieving the Settlement in this contingency-fee Action, Lead Counsel seeks an award of attorneys' fees of one-third of the Settlement Amount (or $3,000,000), plus their litigation expenses of $38,872.83, with interest on such fees and expenses earned at the same rate earned by the Class on the Settlement Fund. For their efforts and time in shepherding the Litigation to a successful conclusion, Plaintiffs also seek an award of $10,000 each. As discussed below, Lead Counsel's requested fee amounts to a 2.59 lodestar multiplier, derived by dividing the requested attorneys' fee award by Lead Counsel's "lodestar" (that is, Lead Counsel's hourly rates multiplied by the hours expended in this Action).

11. Pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice dated May 20, 2022 (ECF 60) ("Preliminary Approval Order"), the Notice and Proof of Claim and Release were mailed to all Class Members who could be identified with reasonable effort. The Claims Administrator, Gilardi & Co. LLC ("Gilardi"), has also mailed additional Notices to brokers and other potential Class Members, where appropriate. As of July 29, 2022, a total of over 40,000 copies of the Notice were mailed. The Notice advised all recipients of, among other things: (i) the definition of the Class; (ii) the right to exclude themselves from the Class and this Settlement; (iii) the right to object to any aspect of the Settlement, including the Plan of Allocation and any

award to Lead Counsel or Plaintiffs; and (iv) the procedures and deadline for submitting a Proof of Claim and Release in order to be eligible for a payment from the proceeds of the Settlement.

12.     Also pursuant to the Preliminary Approval Order, the Summary Notice was published electronically on *Business Wire* and in print in *The Wall Street Journal* and Gilardi established a Settlement-related telephone line and website to provide further information about the Settlement. Lead Counsel's Investor Relations department also fielded inquiries about the Settlement, as did I.

13.     The Court-ordered deadline for filing objections to the Settlement and for requesting exclusion from the Class is August 16, 2022.  To date, no objections to any aspect of the Settlement have been submitted and no requests for exclusion from the Class have been received.  If any objections or requests for exclusion are received, Plaintiffs will address them in a reply submission on or before August 30, 2022.

## II.     THE NATURE AND HISTORY OF THE LITIGATION

### A.     The Commencement of the Action and Appointment of Lead Plaintiff and Lead Counsel

14.     On December 21, 2020, Raffaele Ferraiori, a putative purchaser of Triterras warrants, commenced this Action by filing a Class Action Complaint for Violations of the Federal Securities Laws ("Complaint," ECF 1) in the United States District Court for the Southern District of New York ("Court").  The Complaint alleged violations of Sections 10(b) and 20(a) of the Exchange Act against Defendants Triterras, Koneru, and Rosenberg.

15.     From February 19, 2021 to March 12, 2021, briefing on the appointment of lead plaintiff and lead counsel took place, with Ferraiori and Erlandson filing competing applications (ECF 5-16).  After the Court held argument on April 15, 2021, the Court appointed Erlandson as Lead Plaintiff and approved his selection of Robbins Geller as Lead Counsel.  ECF 20.

4887-1688-2731.v1

**B.      The Amended Complaint and a Summary of the Allegations**

16.      Before Lead Plaintiff's appointment, Lead Counsel began conducting an extensive investigation.  This investigation included, but was not limited to, a review and analysis of: (i) public filings with the SEC and press releases issued by Netfin and Triterras; (ii) reports of securities analysts following Triterras; (iii) disclosures regarding Fintech's business; (iv) independent media reports regarding these and other related entities; (v) voluminous amount of information from official U.S.-based and foreign sources concerning relationships and connections between these entities and relevant individuals, including certain of Defendants; (vi) publicly available information about the commodities trading and trade finance industry; (vii) Triterras's stock price movement and pricing and volume data; and (viii) other available information.  Lead Counsel also dedicated time and resources to identifying and developing witnesses and other sources of information relevant to this Action and the development of the claims and theories of the Litigation.

17.      Based on this investigation, Lead Counsel prepared a detailed Amended Complaint spanning 381 numbered paragraphs over 142 pages that augmented the claims alleged in the initial Complaint, named 12 additional defendants in the Action, and asserted claims under both the Securities Act and the Exchange Act.  The Amended Complaint significantly expanded the theory of the Action and the claims alleged, as detailed herein.  Plaintiffs filed the Amended Complaint as of July 1, 2021.  ECF 38.

18.      The Amended Complaint asserted claims on behalf of those who acquired the Class A common stock or warrants of Triterras during the Class Period of June 29, 2020 to January 14, 2021, as well as purchases pursuant or traceable to investor solicitation materials issued in connection with its de-SPAC transaction and November 10, 2020 issuance of publicly traded securities.  The claims, which alleged new violations of Sections 11, 12(a)(2) and 15 of the Securities Act and continued to

- 6 -

allege violations of Sections 10(b) and 20(a) of the Exchange Act, addressed alleged misleading statements and omissions during the Class Period and issued in connection with Triterras's de-SPAC transaction and other developments.

19.   Specifically, the claims arose from alleged misstatements and omissions about several subjects, including: (i) relationships between entities and insiders at Netfin and Fintech participating in the de-SPAC transaction, including the employment history of certain executives, some of whom occupied management-level positions at Triterras; (ii) the way Netfin's acquisition of Fintech arose from the transactions which resulted in forming Triterras; (iii) Rhodium's financial condition and implications for Triterras's business; (iv) the users of Fintech's trading platform; and (v) the state of the commodities trade financing industry.

20.   The Amended Complaint alleged that investors suffered losses when the trading price of Triterras securities declined after the December 17, 2020 disclosure on related-entity Rhodium's financial condition and the publication of reports on December 17, 2020 and January 14, 2021 about insider relationships, which also suggested that the de-SPAC transaction may have been prearranged and questioned the nature and frequency of alleged related-party transactions on the Kratos platform.

### C.   Efforts to Further Investigate and Resolve the Claims

21.   After the filing of the Amended Complaint, Lead Counsel continued investigating the allegations and engaged in discussions with defense counsel concerning the acceptance of service of the Amended Complaint by the additional defendants, including those located abroad.  During this time, Lead Counsel developed additional information in support of the claims, derived, in part, from corporate records on Singapore entities.  After further investigation and evaluation, Plaintiffs raised the prospect of attempting to resolve the Action through mediation, and Defendants agreed.

4887-1688-2731.v1

22.     In advance of the mediation, on September 28, 2021, the parties submitted to Mr. Melnick detailed mediation statements and exhibits setting forth their respective positions on the strengths and weaknesses of the claims and defenses and addressing issues of liability and damages. The parties also participated in a pre-mediation teleconference and answered questions posed by Mr. Melnick after he reviewed the mediation statements.

23.     On October 8, 2021, the parties participated in mediation using a videoconferencing application. Mr. Melnick presided over the proceedings and met with each side multiple times as the day went on. Lead Counsel strenuously advocated Plaintiffs' positions regarding liability, causation, and damages. Lead Counsel also addressed class certification issues that arose during the mediation. Although the session was productive, the parties did not reach a resolution and the mediation ended at the end of the day without a settlement. Nevertheless, the parties believed that further discussions might be fruitful, and Mr. Melnick agreed to facilitate negotiations with a view toward reaching a resolution without further litigation, if possible.

24.     Even as negotiations continued, Lead Counsel continued to investigate the claims and monitor developments affecting Triterras. After the January 14, 2021 investor report, for example, the Audit Committee of Triterras's Board of Directors commenced an internal investigation with the assistance of outside advisors. On October 28, 2021, Triterras announced that its Audit Committee had concluded the investigation and determined that the allegations described in the report "lack either factual support or material basis" and "do not require additional action by the Company."

25.     In November 2021, Mr. Melnick presented the parties with a proposal to assist them in resolving the Action, subject to formal and customary documentation and, later, Court approval. The parties did not reach agreement but continued to engage in negotiations through Mr. Melnick. Even so, Lead Counsel continued to monitor developments affecting Triterras.

4887-1688-2731.v1

26.     On January 22, 2022, the parties executed a memorandum of understanding, which set forth their non-binding agreement in principle to resolve the Action in exchange for a total payment of $9 million to the Class, inclusive of fees and costs.  The parties then negotiated the terms of the Stipulation.

27.     Once the key terms of the Settlement were agreed upon, Lead Counsel continued to negotiate at arm's length with Defendants' counsel to work out the details of the Settlement and the Stipulation, and drafted the Stipulation and supporting documents.  These negotiations continued until April 27, 2022, when the parties executed the Stipulation.

### D.     Preliminary Approval of the Settlement

28.     On May 13, 2022, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Settlement.  ECF 57-59.  In connection therewith, Plaintiffs requested that the Court: (i) preliminarily approve the Settlement; (ii) certify the proposed Class, appoint Plaintiffs as Class Representatives, and designate Robbins Geller as Class Counsel; (iii) approve the form and manner of notice of the proposed Settlement to the Class; and (iv) set a hearing date for final approval of the Settlement, as well as a schedule for various deadlines relevant to that process.  ECF 58.

29.     The Court granted Plaintiffs' motion for preliminary approval on May 20, 2022, and scheduled a settlement hearing for final approval on September 6, 2022, at 2:30 p.m.  ECF 60.

## III.    THE SETTLEMENT IS IN THE BEST INTEREST OF THE CLASS

30.     The Settlement of $9,000,000 was the result of a targeted and effective litigation and negotiation strategy, with the assistance of an experienced mediator.  The Settlement reflects the strengths and weaknesses of the case, and would not have been achieved without Lead Counsel's efforts described herein.

4887-1688-2731.v1

31.     As set forth below and in the motion for final approval, the Settlement is a favorable result for the Class when evaluated in light of both the result obtained and the risks of continued litigation, as well as other relevant favors under Rule 23(e) of the Federal Rules of Civil Procedure and *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

32.     The Settlement avoids the hurdles Plaintiffs would have had to clear in proving both the full amount of the Class's damages and liability, and avoids the significant costs associated with further litigation of this complex securities action – including obtaining discovery from a Singapore-based company and others located abroad, and, of course, a trial. In view of these significant risks and costs, Lead Counsel respectfully submits that the Settlement is fair, reasonable and adequate and warrants the Court's final approval.

### A.     Plaintiffs and Lead Counsel Developed a Comprehensive Understanding of the Strengths and Weaknesses of the Claims Before the Settlement

33.     As detailed herein, Lead Counsel conducted an extensive investigation and analysis of the facts and legal issues in this Action. Those efforts began before the lead plaintiff appointment process had concluded and continued after filing the Amended Complaint, even as discussions were underway regarding a potential resolution. This process included amassing an enormous amount of information on all of the entities and individuals relevant to the allegedly undisclosed relationships identified in the Amended Complaint, including materials from state agencies, regulators, and other resources regarding the formation of corporate entities and business ventures. This information included records from other countries, including Singapore. Lead Counsel's in-house investigators – all of whom are former members of law enforcement – also worked to identify relevant witnesses.

34.     Additionally, Lead Counsel worked extensively with an outside financial consultant experienced in analyzing and calculating damages under the federal securities laws in similar class actions. These consultations enabled Plaintiffs and Lead Counsel to realistically evaluate the value

- 10 -

of the claims alleged and the potential benefit of further litigation, and the financial consultant was instrumental in determining the reasonable weight to accord particular corrective disclosures during the Class Period in assessing potential damages.  Through this process, Plaintiffs and Lead Counsel gained valuable insight into the likelihood of achieving a recovery beyond that ultimately available in a negotiated resolution.

35.    When negotiating the Settlement, Lead Counsel also engaged in frequent and candid discussions with Mr. Melnick, who has mediated and resolved many securities class actions.  These communications also informed Plaintiffs of the strengths and weaknesses of the claims and defenses and were essential to ensuring that both sides fully understood the risks and benefits of potentially protracted litigation.

36.    All of this enabled Plaintiffs and Lead Counsel to develop an informed understanding of the claims and defenses and the risks attendant to further litigation.  These considerations, in turn, enabled Plaintiffs and Lead Counsel to achieve a favorable resolution in this Action as efficiently as possible, and all of these considerations now allow Plaintiffs and Lead Counsel to fully endorse the Settlement for final approval.

**B.    The Settlement Eliminates Risks that Could Preclude the Prospect of a Meaningful Recovery for Plaintiffs and the Class**

37.    As with all securities litigation under the PSLRA, Plaintiffs and Lead Counsel faced significant hurdles in establishing a compensable claim.  Indeed, absent the Settlement, there is a real possibility that the Class would be unable to obtain a meaningful recovery – or any recovery at all. The nature of the securities claims here, which arose out of a de-SPAC transaction and subsequent Class Period disclosures, implicate novel legal issues that magnified this risk.  Nonetheless, Lead Counsel undertook this Litigation entirely on a contingent-fee basis.

4887-1688-2731.v1

38.     The Settlement alleviates the risks associated with anticipated dismissal motions, class certification proceedings, fact and expert discovery and evidence admissibility challenges, summary judgment, trial, and appellate practice.  In essence, the Settlement, if approved, eliminates the complexity and risk of establishing liability and damages or enforcing any judgment in varying jurisdictions abroad.

39.     For example, there was a risk that Plaintiffs could not prove any disclosure violation. The SEC recently declared the need for improved disclosure in de-SPAC transactions, recognizing the inadequacy of disclosure requirements in effect when Plaintiffs filed the Amended Complaint.[2] Additionally, the securities fraud claims alleged require Plaintiffs to prove that certain Defendants acted with scienter (*i.e.*, fraudulent intent) during the Class Period.  This theory of liability implicates heightened pleading standards under the PSLRA and correspondingly more complicated issues of liability and proof.

40.     This Action also involves unique risks because it asserts Exchange Act claims based on allegedly false and misleading statements and omissions that predated the issuance of Triterras's public securities, but which purportedly remained alive in the market and induced later purchases of those securities.  This expansive theory of liability, as Defendants no doubt recognize, presents novel questions that amplified the risks Plaintiffs would have to overcome to prevail in this Litigation.[3]

41.     Throughout this Action, including mediation and settlement negotiations, Defendants maintained that Plaintiffs would face significant hurdles in proving liability and conceded no aspect

---

[2]     *SEC Proposes Rules to Enhance Disclosure and Investor Protection Relating to Special Purpose Acquisition Companies, Shell Companies, and Projections*, SEC (Mar. 30, 2022), https://www.sec.gov/news/press-release/2022-56.

[3]     The proposed release, however, is reasonably limited, covering claims arising out of the purchase of Triterras securities and that relate to conduct which occurred during the Class Period.

- 12 -

4887-1688-2731.v1

of Plaintiffs' case.  In fact, Plaintiffs expected Defendants to argue that the alleged misstatements were accurate and that no information was omitted or that undisclosed information was discernible in some ways from public sources.  Triterras did not restate financials or revise its disclosures in the wake of its internal investigation and outside audit, and the SEC has never taken action against any Defendants arising out of Plaintiffs' allegations or, to Plaintiffs' knowledge, otherwise.  These facts, while not fatal to establishing liability, are certainly not favorable to Plaintiffs' claims.

42.     While Plaintiffs remain confident in the strength of their claims, these risks raise the possibility that the Class might not recover if this Litigation continues.  Because further litigation is not likely to benefit the Class or result in a more substantial recovery, the Settlement eliminates the risk of no recovery or a lesser recovery and provides a meaningful and prompt benefit to the Class that warrants final approval.

### C.      The Settlement Eliminates the Risks Associated with Damages

43.     Even if Plaintiffs succeeded in overcoming Defendants' arguments against liability, there was a risk that Defendants would be successful in attacking Plaintiffs' damages calculations, which would severely limit, or entirely eliminate, the amount of damages that could be recovered in the Action.  Plaintiffs faced serious risks in overcoming Defendants' negative causation affirmative defense under the Securities Act and in carrying the burden to establish loss causation and damages under the Exchange Act.

44.     This Action alleges damages stemming from corrective disclosures on two dates – *i.e.*, December 17, 2020 and January 14, 2021.  On December 17, 2020, Triterras disclosed that Rhodium had experienced certain financial issues and, separately, an investment report discussed certain relationships between Defendants and others suggesting that the de-SPAC transaction may have been prearranged.  On January 14, 2021, a different investment report discussed some of these

- 13 -

same relationships, identified other relationships, and raised questions about Triterras's business, including the possibility that previously undisclosed related-party transactions occurred on Kratos's platform.

45.    Defendants surely would have contested that these disclosures revealed previously concealed information sufficient to support a securities claim.  If this case proceeded beyond the motion-to-dismiss stage, issues relating to loss causation and damages would have come down to an unpredictable and hotly disputed "battle of the experts."  Indeed, the difficulty in assessing the impact of these disclosures on estimated damages is reflected in the proposed Plan of Allocation included in the Notice, which explains to investors that it weighs the January 14, 2021 disclosure at 50%.  *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), Ex. A (Notice at 9), submitted herewith. Defendants, undoubtedly, would have argued that Plaintiffs' damages methodology is unreliable and does not accurately account for the effect that confounding factors or market factors had on the price of Triterras securities.

46.    Defendants would have further argued that damages, if any, are zero or, at best, significantly less than Plaintiffs had estimated.  For example, Defendants were likely to attack the length of the Class Period, arguing that (if it could be certified at all) it should be significantly shortened (on the front end or backend), which could have reduced potential damages.

**D.    The Complexity, Expense, and Likely Duration of the Litigation**

47.    The continuation of this Action would be long, complex, and costly to all parties involved.  Were the litigation to proceed, fact and expert discovery, class certification and summary judgment motions, trial, and possible appeals would be lengthy and would entail considerable additional costs.

48.	At the time the Settlement was reached, the parties had yet to engage in formal discovery − typically the most expensive and time-consuming aspect of litigation.  There is no question that discovery in this Action would not only be complex, but also expensive and protracted, because Triterras and many of the relevant witnesses and documents are located in the Cayman Islands, Singapore, and other countries – further complicating discovery.

49.	Third parties with relevant knowledge and documents were also likely to be located in these and other countries, and Plaintiffs would likely have needed to serve letters of request through the Hague Convention – an uncertain process that was unlikely to yield evidence in a timely manner, if at all.  All of this would have made fact discovery especially protracted and expensive, with no assurance that even after the time, effort and cost expended, Plaintiffs would have been able to successfully procure necessary discovery.

## E.	Additional Factors

50.	Additional risk was presented by the likelihood that, even if Plaintiffs had completely prevailed at trial on both liability and damages, Defendants would have brought post-verdict motions and appeals, resulting in years of delay in getting any relief for Class Members (even assuming that Plaintiffs would ultimately prevail on appeal).  This also assumes that there would be no intervening changes in legal standards or doctrines that could have a negative effect on Plaintiffs' claims.

51.	Even if Plaintiffs prevailed at trial and obtained a judgment, Plaintiffs might have had difficulty enforcing any judgment against Triterras in Cayman Islands or Singapore courts, as Triterras does not appear to have assets located in the United States.  As a result, it could have been years before the Class received a recovery, if any, and whether Triterras would still have been a viable company with sufficient assets to then satisfy a judgment is unknown.  The limited insurance coverage – which was used to partially fund the Settlement – would have been further depleted to

4887-1688-2731.v1

pay these ongoing and substantial expenses.  Further, Triterras's business has been seriously affected by the COVID-19 pandemic and, since the filing of the Amended Complaint, its securities have been de-listed from trading on the NASDAQ.  The Settlement, which provides an immediate recovery for the Class, avoids the risk that these issues could complicate or preclude a potential future recovery.

52.    The experience of Lead Counsel also favors the Settlement.  Robbins Geller is nationally recognized for their experience and expertise in complex class action and securities litigation.  Robbins Geller's reputation as attorneys who are willing to zealously carry a meritorious case through trial and appeals gave Lead Counsel a strong negotiating position, even under the challenging circumstances presented here.  *See* accompanying Declaration of Joseph Russello Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Fee Decl."), Ex. F (firm résumé).

53.    The lack of opposition to the Settlement also militates in favor of the Settlement.  As outlined below, notice has already been widely disseminated to Class Members.  The absence of any objections to the Settlement or requests to opt out of the Class to date weigh in favor of the Settlement.  Additionally, counsel for Defendants consisted of top-tier national firms, Cahill Gordon & Reindel LLP, Duane Morris LLP, White & Case LLP, and DLA Piper LLP (US), who mounted a formidable defense.

54.    Based on all of these factors, Lead Counsel and Plaintiffs respectfully submit that the Settlement represents a very favorable result for the Class.  The Settlement provides Class Members with a substantial benefit now, where there is a significant likelihood of less recovery or no recovery at all if the litigation were to continue.

4887-1688-2731.v1

## IV.    THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS APPROVAL

55.    The proposed Plan of Allocation, prepared with the assistance of Plaintiffs' damages consultant, is designed to achieve an equitable distribution of the Net Settlement Fund to Authorized Claimants and is consistent with Section 11(e) of the Securities Act.  The Plan is set forth in the Notice (Murray Decl., Ex. A, Notice at 9-12), and provides that the Net Settlement Fund will be distributed to any Class Member who submits a valid Proof of Claim and Release by September 1, 2022, and whose claim for payment is permitted under the Stipulation.

56.    The Plan provides that Class Members are eligible to participate in distribution of the Net Settlement Fund only if they have an overall net loss on all applicable transactions in Triterras securities.  After deducting taxes, approved costs, attorneys' fees and expenses, and any award to Plaintiffs, the Net Settlement Fund will be distributed according to the Plan to Authorized Claimants who are entitled to a distribution of at least $10.00.

57.    Gilardi, as the Court-approved Claims Administrator, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on each Authorized Claimant's total Recognized Loss compared to the total Recognized Losses of all Authorized Claimants.  Plaintiffs' losses will be calculated in the same manner.

58.    Lead Counsel believes that the Plan of Allocation, which is similar to plans routinely approved by other courts, provides a fair and reasonable method to equitably distribute the Net Settlement Fund among Authorized Claimants.  To date, not a single Class Member has objected to the proposed Plan of Allocation.  It is fair and reasonable, and should be approved.

- 17 -

## V.   LEAD COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES IS REASONABLE AND SHOULD ALSO BE APPROVED

59.    To resolve this Litigation and achieve the Settlement, Lead Counsel's attorneys, investigators, other professionals, and staff performed 1,596.80 hours of work and incurred $38,872.83 in expenses and charges. *See* Robbins Geller Fee Decl., Exs. A-B. For these efforts, Lead Counsel seeks an award of attorneys' fees of one-third of the Settlement Amount and an award of its expenses and charges incurred in prosecuting this Action. These expenses and charges are reflected in Lead Counsel's books and records. *Id*., Ex. B. Plaintiffs have approved and support Lead Counsel's request. *See* ¶5 to the Declaration of John A. Erlandson ("Erlandson Decl."); ¶5 to the Declaration of James Ian Norris ("Norris Decl."), submitted herewith.

60.    A one-third fee award is consistent with the percentages awarded in other comparable securities class actions in this District and around the country. *See* Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Settlement and Approval of the Plan of Allocation and for an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4) ("Memorandum"), §VII.C, submitted herewith. Based on the quality of work and the benefit obtained for Class Members in light of the risks discussed above, Lead Counsel respectfully submit that the fee and expense request is fair and reasonable.

61.    Lead Counsel diligently worked to develop and employ an effective strategy to secure a recovery for the Class, through litigation or settlement. Despite this targeted effort, Lead Counsel devoted substantial attorney resources and financial resources to this Action. Through July 13, 2022, Lead Counsel accrued a total lodestar of $1,158,033.00, which represents the number of hours worked multiplied by each person's respective hourly billable rate. *See* Robbins Geller Fee Decl., Ex. A. The requested one-third fee represents a multiplier of 2.59, which is within the range of multipliers courts within this Circuit have allowed. *See* Memorandum, §VII.D.

4887-1688-2731.v1

62.    As discussed above, Lead Counsel faced significant risks in pursuing this Action. This was not a case where any recovery was assured.  Compounding the risk, Lead Counsel's fees are wholly contingent and dependent upon a successful result and an award by this Court.  From the outset, Lead Counsel understood that it was embarking on a complex, expensive, challenging, and lengthy litigation – with no guarantee of compensation for the investment of time, money, and effort the Action would require.

63.    Lead Counsel worked diligently to obtain this result for the Class.  To do so, Lead Counsel employed considerable resources and spent considerable time researching and investigating the facts and law to prepare a pleading that would survive dismissal, position the Litigation for class certification and further proceedings, and later result in a recovery for the Class.  Theories of liability and damages were complex and Lead Counsel devoted much time to developing a strong basis for liability and a defensible damages analysis, working extensively with a consultant to analyze various damages scenarios based on the allegations and so-called corrective disclosures at issue.

64.    Attorneys from Robbins Geller are among the most knowledgeable and experienced practitioners in the field of securities class actions, and they brought that wealth of knowledge and experience to bear in this Action.  *See* Robbins Geller Fee Decl., Ex. F.  Defendants are represented by lawyers from Cahill Gordon & Reindel LLP, Duane Morris LLP, White & Case LLP, and DLA Piper LLP (US), all well-respected law firms with experience in securities litigation.  Faced with such formidable and well-financed opposition, Lead Counsel nevertheless developed a sufficiently strong case to lead to the Settlement, but it was by no means an easy or preordained outcome.

65.    There are numerous cases, including many handled by Lead Counsel, where class counsel in contingent fee cases such as this have received no compensation after spending thousands of hours of time and incurring significant costs.  That corporate defendants and their counsel know

- 19 -

4887-1688-2731.v1

that the leading members of the plaintiffs' bar are able to, and will, go to trial even in high-risk cases like this one gives rise to meaningful settlements. Lead Counsel know from personal experience that despite the most vigorous and competent of efforts, success in contingent litigation is never assured.

66.     Lead Counsel undertook this Action with the understanding and expectation that it would have to devote a significant amount of time and effort, and incur substantial costs in advance, without any guarantee of compensation and at the expense of other matters. Unlike defense counsel, who are paid an hourly rate and reimbursed for their expenses on a regular basis, Lead Counsel has not received compensation or reimbursement for its time or expenses since this Litigation began. The only way Lead Counsel will receive payment in this Action is if it achieves a successful result, which Lead Counsel respectfully submits, this Settlement represents.

67.     Lead Counsel's $38,872.83 in expenses and charges were necessary for the successful prosecution of this Litigation and are also reasonable. These expenses reflect routine and typical expenditures incurred during the course of litigation, such as the costs of document duplication, consultant fees, mediation fees, and the procurement of public records, for example. The expenses and charges represent less than 0.50% of the total Settlement Amount, reflecting the efficiency with which Lead Counsel litigated this Action.

68.     Although the deadline for Class Members to object has not yet passed, Lead Counsel has thus far not received any objection to its request for an award of fees and expenses. In reply papers in further support of final approval, Lead Counsel will respond to any objections that are timely received by the August 16, 2022 deadline.

## VI.    AN AWARD TO PLAINTIFFS IS FAIR, REASONABLE, AND PROPER

69.     The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the

- 20 -

4887-1688-2731.v1

class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. §77z-1(a)(4).

70.    As explained in their declarations, Plaintiffs request an award of $10,000 each to compensate them for their time spent on actively participating in and monitoring this Action. *See* Erlandson Decl., ¶6; Norris Decl., ¶6. The amount of effort that Plaintiffs devoted to this Litigation is detailed in their accompanying declarations. *See* Erlandson Decl., ¶3; Norris Decl., ¶3.

71.    Many courts, including those in this Circuit, have approved reasonable payments to compensate plaintiffs for the time and effort they devoted to pursuing claims on behalf of a class. Plaintiffs here dedicated time and effort to interfacing with counsel, monitoring the investigation, reviewing documents before and after filing (as necessary), supervising the mediation process and negotiations, reviewing updates and factual developments, and otherwise assisting counsel, as asked. Simply put, without their involvement in this Action and their contributions to date, there would be no recovery for the Class. As such, Lead Counsel respectfully submits that the Court should grant Plaintiffs' requested awards in the entirety.

## VII.    CONCLUSION

72.    For the reasons set forth above and in the accompanying submissions, Lead Counsel respectfully submits that: (i) the Settlement is fair, reasonable and adequate, and is entitled to final approval; (ii) the Plan of Allocation is a fair method for distributing the Net Settlement Fund among Class Members and is also entitled to approval; and (iii) the request for attorneys' fees of one-third of the Settlement Amount and expenses of $38,872.83, with interest thereon earned at the same rate

4887-1688-2731.v1

as the Net Settlement Fund, plus an award to Plaintiffs of $10,000 each, is fair, reasonable, and likewise entitled to approval.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.  Executed on August 2, 2022, at Melville, New York.

_s/ Joseph Russello_
JOSEPH RUSSELLO

4887-1688-2731.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on August 2, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ Joseph Russello*
JOSEPH RUSSELLO

ROBBINS GELLER RUDMAN
   & DOWD LLP
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Email: jrussello@rgrdlaw.com

# Mailing Information for a Case 7:20-cv-10795-CS Ferraiori v. Triterras, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Landis C. Best**
  lbest@cahill.com,MA@cahill.com

- **Bradley Joseph Bondi**
  bbondi@cahill.com,MA@cahill.com

- **Peggy Senyie Chen**
  pschen@duanemorris.com,managingclerk@ssbb.com,nydocket@duanemorris.com,autodocketny@duanemorris.com

- **Kimberly Anne Havlin**
  kim.havlin@whitecase.com,jdisanti@whitecase.com,mco@whitecase.com

- **Dana B. Klinges**
  dklinges@duanemorris.com,dgartner@duanemorris.com

- **Charles H. Linehan**
  clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- **Gregory Bradley Linkh**
  glinkh@glancylaw.com,info@glancylaw.com,greg-linkh-2000@ecf.pacerpro.com

- **William A. Massa**
  wmassa@rgrdlaw.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Joseph Frank Russello**
  jrussello@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,jrussello@ecf.courtdrive.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)