UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JOHN A. ERLANDSON and JAMES IAN
NORRIS, individually and on
behalf of all others similarly
situated,

               Plaintiffs,

      -against-               20 CV 10795(CS)
                          Fairness Hearing
TRITERRAS, INC. (f/k/a NETFIN
OLDCO), NETFIN ACQUISITION CORP.,
TRITERRAS FINTECH PTE. LTD., MVR
NETFIN LLC, RICHARD MAURER, MARAT
ROSENBERG, VADIM KOMISSAROV,
GERALD PASCALE, SRINIVAS KONERU,
JAMES H. GROH, ALVIN TAN, JOHN A.
GALANI, MATTHEW RICHARDS, VANESSA
SLOWEY and KENNETH STRATTON,
               Defendants.
------------------------------------x

                      United States Courthouse
                      White Plains, New York
                      September 8, 2022

B e f o r e:  THE HONORABLE CATHY SEIBEL,
                      District Judge

ROBBINS GELLER RUDMAN & DOWD LLP
        Attorneys for Plaintiffs
THOMAS J. PINTAR
JOSEPH F. RUSSELLO
WILLIAM A. MASSA

DUANE MORRIS LLP
        Attorneys for Koneru and Triterras
ANDREW L. FISH

            -and-

CAHILL GORDON & REINDEL LLP
        Attorneys for Koneru and Triterras
LANDIS C. BEST

          Angela O'Donnell - Official Court Reporter
                 (914)390-4025

THE DEPUTY CLERK:  The Honorable Cathy Seibel presiding.  Ferraiori v. Triterras.

THE COURT:  Good afternoon everyone.  Let me make sure I know who's who.

Mr. Pintar.

MR. PINTAR:  Yes, your Honor.  Good afternoon.

THE COURT:  Am I saying that right?

MR. PINTAR:  You are.

THE COURT:  And Mr. Russello.

MR. RUSSELLO:  Yes, your Honor.

THE COURT:  Mr. Massa.

MR. MASSA:  Yes, your Honor.

THE COURT:  And Mr. Fish and Ms. Best.

MS. BEST:  Yes.

THE COURT:  You guys can have a seat.

I guess my first question is whether there's anybody here to object to the settlement.

I hear nothing.

I haven't heard from any objectors, and I assume you folks haven't either.

MR. PINTAR:  That's correct, your Honor.

THE COURT:  I'm prepared to put my findings on the record.

Pending before me is plaintiffs' unopposed motion for final approval of the proposed class settlement and an award of

attorneys' fees and costs for class counsel and service award for the class representatives.

I presume the parties' familiarity with the underlying facts and procedural history of the case, and I incorporate by reference the summary of the facts and procedural history set forth in the stipulation and agreement of settlement, which is ECF number 57, pages 1 to 4, and the declaration of Mr. Russello, which is ECF number 67, paragraphs 14 to 54. Also, see ECF number 66, plaintiffs' final approval memorandum at page 3.

In brief, Raffaele Ferraiori brought this case on December 21, 2020, on behalf of a proposed class of purchasers of Triterras securities alleging that defendants violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. On April 15th of last year I granted plaintiff John Erlandson's motion to become lead plaintiff and approved his counsel, Robbins Geller Rudman & Dowd LLP as lead counsel under the Private Securities Litigation Reform Act of 1995 or PSLRA. Mr. Erlandson, together with plaintiff James Norris, filed an amended class action complaint, ECF number 38, naming additional defendants and asserting new claims under the Securities Act of 1933 in addition to the previously asserted claims under the 34 Act and Rule 10b-5. The amended complaint asserts claims on behalf of persons who purchased or acquired Class A common stock or warrants of Triterras from June 29,

2020 to January 14, 2021, which is the class period.  The amended complaint alleges that the investors suffered losses caused by defendants' misstatements and omissions when the trading price of Triterras securities declined.

Eventually, the parties agreed the attempt to resolve the action through mediation, they enlisted Jed Melnick of JAMS to conduct an all-day mediation on October 8th of last year. The matter did not settle that day, but the parties continued to work with Mr. Melnick and eventually agreed to resolve the class action for $9 million, including fees and costs paid to the class.  On May 13 of this year, plaintiffs filed the settlement agreement as well as an unopposed motion for a preliminary approval and memorandum in support.  On May 20, I preliminarily approved the settlement and set a fairness hearing for September 6, and then, for personal reasons, had to change it to today, but nobody showed up to object on September 6.  Gilardi & Co LLC was appointed as the class action settlement administrator to disseminate notice to the class and process the claims.  Gilardi sent the approved notice and proof of claim to all identifiable class members, brokers, and other potential class members and published the approved summary notice electronically on *Business Wire* and in print in the *Wall Street Journal*.  This is all from the Russello declaration.

The following are the main terms of the settlement agreement and addendum.

First of all, the class consists of all persons who purchased or otherwise acquired Triterras Class A common stock or warrants from June 29, 2020 through January 14, 2021. The class excludes the defendants and their families, entities with or that had a controlling interest in the Defendants, and the legal representatives, heirs, successors-in-interest, or assigns of any excluded party. The class also excludes persons who timely and validly request exclusion from the class. That's in paragraph 1.3.

The settlement amount is $9 million, that's in paragraph 1.25, to be paid according to the process set forth in paragraph 2.2, under which at least half was to be sent to the escrow agent within ten days of the preliminary approval order and the balance within 14 days.

The settlement fund consists of the settlement amount plus all interest and accretions thereto which may be reduced by payments or deductions as provided for by the settlement agreement and approved by the Court. The settlement fund is consideration for the full and complete settlement of all the released claims. That's paragraph 1.26.

The net settlement fund consists of the settlement fund less attorneys fees, expenses, plaintiffs' awards, and interest provided for by the settlement agreement or approved by the Court and less any expenses, taxes, and other Court-approved deductions. That's paragraph 1.15. The net

settlement fund is what is to be distributed to the plaintiffs. Paragraph 15.2.

There is a plan or formula of allocation for distributing the net settlement fund to authorized claimants. See paragraph 1.19.  The plan of allocution sets forth that class members who submit a valid and timely proof of claim may receive a distribution if they suffered an overall net loss on transactions in Triterras securities during the class period. See settlement agreement Exhibit A-1 at page 20.  The net settlement fund will be distributed to authorized claimants on a *pro rata* basis based on the amount of each class member's loss relative to the aggregate amount of losses claimed by the class.  The process for determining eligible shares and warrants, determining recognized claims, which is a defined term, and calculating recognized losses on eligible shares and warrants is explained in the plan of allocation.  See pages 20 to 27 from Exhibit A-1 to the agreement.  The plan of allocation was prepared in consultation with an outside financial consultant who specializes in assessing damages and developing plans of allocation in securities class actions.  If there's money left over after the initial distribution, the balance will be reallocated among the authorized claimants more than once, if necessary, in an equitable fashion with any *de minimis* balance going to the New York Bar Association. Paragraph 5.8.

Lead counsel is requesting $3 million as attorneys' fees and $38,872.83 in litigation costs and expenses from the settlement fund and any interest on the fees and expenses at the same rate and for the same periods as earned by the settlement fund.  See paragraph 6.1 and the Russello declaration paragraph 10.  Lead counsel notified the class it was going to apply for an award of attorneys' fees from the settlement fund in an amount up to one-third of that fund and an award of litigation expenses not exceeding $100,000 plus any interest.  See Settlement Agreement Exhibit A-1 at page 4.

Plaintiffs also request $10,000 each for a total of $20,000 as service awards from the settlement fund in connection with the named plaintiffs' representation of the proposed class pursuant to 15 U.S. Code, Section 78z-1(a)(4). See paragraph 5.2, ECF number 68, paragraph 6, and ECF number 69, paragraph 6.  The class was notified that plaintiffs were going to seek service awards up to that amount.  Under the settlement agreement, class members fully release any and all claims against defendants related to the purchase or acquisition Class A common stock or warrants of Triterras during the relevant period and/or relating to the conduct defendants are alleged to have engaged in in this lawsuit.  See paragraphs 1.22 and 4.1 to 4.4.  The release does not include claims to enforce the settlement.  Class members also expressly waive the provisions, rights, and benefits of California Civil

Code section 1542 or any similar, comparable, or equivalent laws.  See paragraphs 1.22, 1.30, and 4.1 to 4.4.

The effective date of the settlement is three business days after the date by which all the events and conditions specified in paragraph 7.1 have occurred or been met.  See paragraph 1.8.

So first I address whether the settlement class warrants certification under Rule 23.

The legal standard is well-known.  A settlement class allows the parties to concede, for purposes of settlement negotiations, the propriety of bringing the suit as a class action and allows the Court to postpone formal certification on the class until after settlement negotiations have ended.  *In re IPO*, 260 F.R.D. 81, 88 (S.D.N.Y. 2009).  Such settlement only classes have become stock devices in modern class action cases.  *Amchem v. Windsor*, 521 U.S. 591, 618.

Before certification is proper for any purpose, the Court has to ensure that the requirements of Rules 23(a) and (b) are met.  *Denney v. Deutsche Bank*, 443 F.3d 253, 270.  The only exception is that a district court does not need to inquire whether the case, if tried, would present intractable management problems under Rule 23(b)(3)(D), because the proposal is that there will be no trial.  *Amchem* at 620.  The requirements of Rule 23(a) and 23(b) should not be watered down by virtue of the fact that the settlement is fair or equitable.

*Denney* at 270.  Indeed, the Rule 23(e) inquiry into the fairness of the settlement cannot supplant the inquiries under Rules 23(a) and (b) regarding whether the requirements for class certification have been met.  If the requirements are met, certification may be granted conditionally or unconditionally.  *Denney* at 270.

Under Rule 23(a), plaintiffs in the proposed class must demonstrate that they satisfy the four requirements of numerosity, commonality, typicality, and adequacy of representation.  *Central States v. America*, 504 F.3d 229, 224.  In addition, courts have recognized an additional implied requirement that there be an identifiable or ascertainable class.  *See In re Petrobras*, 862 F.3d 229, 244.  In other words, the class must be readily identifiable so the Court can determine who is in it, and thus, who is bound by the action.  *See Dunnigan v. Met Life*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003).

If the requirements of Rule 23(a) are met, the Court then has to decide whether the class complies with one of the subsections of Rule 23(b).  Under 23(b)(3) a plaintiff has to show that questions of law or fact common to class members predominate over any questions affecting individual members and the class action device is superior to any other method of adjudication.  *See In re IPO*, 471 F.3d 24, 32, clarified on rehearing 483 F.3d 70.

Rule 23 is not merely a pleading standard, rather,

the party seeking class certification must affirmatively demonstrate compliance with the rule.  Class certification is proper only if the Court is satisfied after a rigorous analysis that the prerequisites of Rule 23 have been satisfied. *Wal-Mart v. Dukes*, 564 U.S. 338, 350.  The party seeking certification bears the burden of establishing the Rule 23 requirements by a preponderance of the evidence.  *Myers v. Hertz*, 624 F.3d 537.

I'll start with Rule 23(a).  In this circuit, numerosity is presumed at a level of 40 members.  *Conrail v. Town of Hyde Park*, 47 F.3d 473, 483.  Although each case must be separately analyzed because a determination of practicability depends on all the circumstances, not mere numbers.  *Forde v. Waterman*, 2013 WL 5309453, at *4 (S.D.N.Y. September 18, 2013).  In securities fraud actions brought against publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by showing that a large number of shares were outstanding and traded during the relevant period.  *In re Graña y Montero,* 2021 WL 4173684, at *8 (E.D.N.Y. August 13, 2021).  Triterras had 81 million ordinary shares and nearly 26 million warrants outstanding as of February 28, 2021, and it sent out over 40,000 notice packages. See paragraph 4 of ECF number 75.  This is sufficient to satisfy numerosity.

Turning to commonality, that does not mean all issues

must be identical as to each member but that plaintiffs identify some unifying thread among the members' claims that warrants class treatment. *Demassia v. Duane Reade*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008). Commonality is satisfied here, as the class members' claims all involve the same alleged misstatements and omissions communicated to investors about, among other things, the relevant transaction and relationships among involved entities and individuals and all claims rely on the same legal theories. See paragraphs 18 to 20 of Mr. Russello's declaration.

For the same reason, typicality is satisfied. *See Central States* at 245, which noted the typicality is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove liability. Here, the same alleged unlawful conduct by the defendants' misstatements and omissions about several subjects causing class members to suffer losses when the trading price of Triterras securities declined, none of which defendants admit, by the way, affected the named plaintiffs and class members alike.

Finally, there's no suggestion that the named plaintiffs and lead counsel are not adequate representatives, and I've already so found with respect to plaintiff Erlandson. See ECF number 20. Considering what has happened since, I find that plaintiffs and lead counsel are indeed adequate for Rule

23(a) purposes.

The fifth pre-condition of the implied requirement, ascertainability is also met. *See In re IPO*, 471 F.3d at 30. This means the class has to be identifiable. *Charron v. Pinncale Group*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010). It's not a demanding standard, it's only designed to prevent certification of the class whose membership is truly not able to be determined. *Ebin v. Kangadis Food*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014).

Here, the class is readily identifiable as those persons who purchased or acquired the Class A common stock or warrants of Triterras during the class period.

I now turn to 23(b). Plaintiff seeks certification under 23(b). They must establish the questions of law or fact common to class members predominate over any questions affecting only individual members and that the class action is superior to other available methods.

The predominance inquiry tests whether the classes are sufficiently cohesive to warrant adjudication by representation. *Amchem* at 623. It is a test readily met in certain cases alleging consumer or securities fraud. *Amchem* at 625. Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more

substantial than the issues subject only to individualized proof. *Moore v. Paine Webber*, 306 F.3d 1247, 1252. As discussed, the conduct informs the basis for all class members' claims is virtually identical, meaning the common questions predominate. *See In re Telik*, 576 F.Supp. 2d 570, 584 (S.D.N.Y. 2008); and *In re Merrill Lynch Tyco*, 249 F.R.D. 124, 132 (S.D.N.Y. 2008). In *Telik*, the Court found common questions predominated, including whether the securities laws were violated by the defendants' statements and omissions. And in *Merrill Lynch* the Court said that only the issues of damages would be different for each class member, their claims involving the same questions of law and fact. So the predominance requirement is met.

Plaintiffs have also established superiority. In light of the claims, class members would be unlikely to commence litigation on their own as the potential damages are likely to be relatively modest compared to the time, effort, and cost of litigating the case on an individual basis. *See In re Blech*, 187 F.R.D. 197, 107-108 (S.D.N.Y. 1999).

So I find plaintiffs have met their burdens under Rules 23(a) and 23(b)(3), and I therefore grant final certification of the proposed class for settlement purposes.

I now turn to whether the settlement agreement warrants approval. The class action can only be settled with a Court's approval after a hearing and on finding that the

settlement is fair, reasonable, and adequate.  Rule 23(e)(2).  Where the settlement is negotiated before the class is certified, the proposed settlement is subject to a higher degree of scrutiny in assessing its fairness.  *In re Sony*, 2008 WL 1956267, at *5 (S.D.N.Y. May 1, 2008).

In evaluating the fairness of a proposed settlement, the Court must look at the procedural fairness, that is, the negotiated process culminating in the proposed settlement and the subsequent fairness of the settlement's terms.  *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804.  The Court has to determine whether the settlement properly protects the interests of the absent class members weighing the remedies they will obtain against the probable costs and results of continued litigation.  *See* volume 4, *Newberg on Class Actions Section* 13:39 (Sixth Edition 2022).

I'll start with procedural fairness.  A strong initial presumption of fairness attaches if the settlement is reached by experienced counsel after arm's-length negotiations.  *City of Providence v. Aeropostale*, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014), affirmed 607 F.App'x 73.  While there's a strong judicial policy in favor of settlement, *See Walmart v. Visa*, 396 F.3d 96, 116, courts should nevertheless pay close attention to the negotiations, looking in particular for evidence that they were conducted at arm's length, that appropriate discovery was conducted, and that plaintiffs'

counsel possessed sufficient ability and experience to effectively represent plaintiffs and the class.  Any evidence of bad faith or collusion would indicate a lack of procedural fairness and provide possible grounds to reject the proposed settlement.

Here, the evidence suggests the settlement agreement is procedurally fair.  Lead counsel negotiated with defendants at arm's length after extensive investigation, discussion, and negotiation with the help of a neutral and experienced mediator.  See Russello declaration 22 to 27, which raises a strong presumption of fairness.  *See Aeropostale* at *4.  The parties conducted an all-day mediation with a JAMS mediator who continued to help them beyond that session to reach an agreement.  Counsel is also sufficiently experienced in prosecuting complex securities class actions and has the requisite ability to handle these types of cases, and worked with additional counsel also experienced in litigating securities class actions.  Russello declaration paragraphs 52 to 53.  Accordingly, I conclude the settlement resulted from arm's length negotiations and that counsel possessed the experience and ability necessary to effectively represent the class's interests.  There's no evidence of bad faith, fraud, or collusion.  The procedural fairness requirement is satisfied.

For the substantive fairness inquiry, I considered the four factors in the new Rule 23(e)(2), in addition to the

nine *Grinnell* factors that courts in the Second Circuit traditionally considered before the recent amendments to Rule 23.  *See Johnson v. Rausch Sturm Israel Enerson & Hornik,* 333 F.R.D. 314, 320.

Not every factor must weigh in favor of settlement, but rather the Court should consider the totality of the factors in light of the particular circumstances.  *In re Global Crossing*, 225 F.R.D. 436, 456.  In light of these factors, I find the settlement to be substantively fair.

First I consider the *Grinnell* factors, the complexity, expense, and likely duration of the litigation is first one.  In general, securities class actions are recognized to be difficult and notoriously uncertain to litigate.  *In re Facebook*, 343 F.Supp. 3d 394, 409 (S.D.N.Y. 2018).  This case presents complex issues which would require expensive and lengthy litigation, so this factor weighs in favor of approval.

Next is the reaction of the class to the settlement. A deadline for opt-outs and objections was August 16th.  One class member opted out and none objected.  See ECF number 75, paragraph 6.  This weighs strongly in favor of settlement.  *See In re Virtus Investments*, 2018 WL 6333657, at *2 (S.D.N.Y. December 4, 2018*); in re Advanced Battery*, 298 F.R.D. 171, 176 (S.D.N.Y. 2014); and *In re AMF Bowling* 334 F.Supp. 2d 462, 466 (S.D.N.Y. 2004).

Next is the stage of the proceeding and the amount of

discovery completed.  Although settlement was reached before the case had proceeded very far, lead counsel had conducted extensive investigation, consulted an outside financial consultant, participated in mediation, and negotiated with defendants.  See Russello declaration paragraphs 33 to 36. Lead counsel had a thorough appreciation of the merits of the case before concluding the settlement, which weighs in favor of approval.  *See Beckman v. KeyBank*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013).

The next two factors are the risks of establishing liability and damages.  Were litigation to continue, plaintiff would need to establish defendants' scienter for liability arising out of any conduct, statements, acts, or omissions, all of which defendants have denied and continue to deny.  *See In re Graña y Montero* at 13.  Plaintiffs would also have to overcome defendants' negative causation affirmative defense under the 33 Act and establish loss causation and damages under the 34 Act.  See Russello declaration, paragraph 43.  And litigation inherently involves risks, both in establishing liability and damages.  *Surdu v. Madison Global*, 2018 WL 1474379, at *5 (S.D.N.Y. March 23, 2018).  Proof of damages in a securities fraud case is always difficult and invariably requires expert testimony.  *Mikhlin v. Oasmia Pharmaceutical*, 2021 WL 1259559, at *6 (E.D.N.Y. January 6, 2021).  The proposed settlement alleviates the uncertainty concerning the

outcome and duration of litigation.  So this factor weighs in favor of approval.

Next is the risk of maintaining the class through trial.  Defendants would likely challenge class certification if litigation were to continue, and they could also, if the class were certified, seek to decertify a class.  *In re Bear Stearns,* 268, 269 (S.D.N.Y. 2012).  Here, I do not see much of a likelihood that this would not ultimately be a class case, so this factor does not weigh in favor of settlement.

Next is the ability for defendants to withstand a greater judgment.  Since the initiation of the litigation, defendants' business and financial conditions have suffered, including as a result of Triterras's securities being de-listed from trading on the NASDAQ, and Triterras has only limited insurance funds, which would be depleted by further litigation. See Russello declaration, paragraph 51.  Further, even if defendants could withstand a greater judgment, that does not necessarily preclude a finding that the settlement is fair. *In re Graña y Montero* at *14.  This factor does not weigh against approval.

The last two *Grinnell* factors are the range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation. Courts must factor the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily

inherent in taking litigation to completion.  *Wal-Mart* 396 F.3d at 119.  At the time the settlement agreement was executed, plaintiffs estimated their reasonable recovery range to be between $80 and $130 million, depending on various scenarios.  See Russello declaration, paragraph 5.  Following negotiation, the parties settled on $9 million for the settlement amount for recovery of approximately 6.9 to 11.3 percent of the estimated recoverable damages were the case to succeed at trial.  See paragraphs 5 and 8.  Considering the costs of future litigation, the risks attendant with moving forward with litigation, the relief the class will receive, and defendants' financial situation, I am satisfied that the settlement is a reasonable compromise and this factor weighs in favor of settlement.  *See In re Merrill Lynch*, 249 F.R.D. at 135, where the Court said the estimated recovery of three percent of the total damages estimated by the plaintiffs does not meaningfully diverge from the range of reasonableness for settlements of similarly sized securities class actions; and *see also In re Facebook*, 343 F.Supp. 3d at 414, which said that even if the actual recovery was one-tenth or less of the potential recovery, the risk of zero or minimal recovery is real and the potential of a dramatically reduced judgment or no judgment at all suggests that the actual recovery is within the range of reasonableness.

                    Turning to Rule 23(e)(2).  I've already explained

that plaintiffs and lead counsel have adequately represented the class and that the settlement agreement resulted from arm's length negotiations.  I also find the relief for the class is adequate, taking into account, as discussed, the costs, risks, and delay of trial and appeal, the financial straits of defendants, and the effectiveness of the plan of allocution set forth in the settlement agreement.  Additionally, the settlement treats class members equitably relative to each other as it calculates the amount of artificial inflation in the price of Triterras securities during the class period due to the alleged misstatements and omissions and then allocates the net settlement fund to plaintiffs on a *pro rata* basis in accordance with the number of shares or warrants owned and when they were owned.  See Exhibit A-1 at 20 to 27 and the Russello declaration, 55 to 58.  This allocation structure provides equitable relief to the class members so their share is proportional to the securities they owned and the losses they suffered.

Because I find the settlement is both procedurally and substantively fair, final approval is proper.

Next I turn to the sufficiency of the notice to class members.

"While there are no rigid rules to determine the adequacy of notice in a class action, the standard is generally that of reasonableness.  Notice need not be perfect but need be

only the best notice practicable under the circumstances and each and every class member need not receive actual notice so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *In re Merrill Lynch* at 132-33.  Individual notice must be sent to those class members whose names and addresses can be ascertained through reasonable effort.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173.

Under paragraph 2.7 of the agreement, lead counsel was responsible for disseminating notice and summary notice. Gilardi was appointed as the settlement administrator to disseminate the notice of process of claims.  Gilardi initially sent copies of the notice and proof of claim to 11 individuals identified by Triterras, 281 brokerages, custodial banks, or other institutions that hold securities as nominees for the benefit of their customers, 4,445 institutions included on the SEC's list of active brokers and dealers at the time of mailing, and 336 registered electronic filers who are institutions or other third-party filers who typically file numerous claims on behalf of beneficial owner clients for whom they act as trustees or fiduciaries.  See ECF number 70, paragraph 6 to 7.  After that initial mailing, Gilardi received responses requesting over 35,000 copies of the notice and proof of claim to be provided through those institutions to their clients.  That's in paragraph 10.  Between July 29 and August

29, Gilardi sent out an additional 19 copies in response to requests from class members, brokers, and nominees, and in response to mailings that were returned as undeliverable.  ECF number 75, paragraph 4.  Gilardi also published the notice, proof of claim, stipulation, and notice order to a website called TriterrasSecuritiesSettlement.com and had a summary version of the notice published in the *Wall Street Journal* and on *Business Wire*.  See paragraphs 12 and 14.  In total, they sent a notice and proof of claim to over 40,000 recipients.  ECF number 75, paragraph 4.  Based on the extensive efforts undertaken to locate and reach potential class members and the number of notices mailed out, I find lead counsel acted reasonably in choosing the means likely to inform potential class members and that notice has been provided directly to all class members who could be identified through reasonable effort and that the notice plan as administered by Gilardi constitutes the best notice practicable under the circumstances.

Plaintiffs request $10,000 each for plaintiffs Erlandson and Norris to be paid from the settlement fund as service awards for their representation of the class.  Under section 78z-1(a)(4), which calls for class members to receive equal portions of the settlement amount on a per-share basis but does not limit the award of reasonable costs and expenses, including lost wages directly relating to the representation of the class to any representative party serving on behalf of a

class.  And the notice informed the class that plaintiffs were going to be applying for these awards.

"In this circuit, the courts have, with some frequency, held that a successful class action plaintiff may, in addition to his or her allocable share of the ultimate recovery, apply for and, in the discretion of the Court, receive an additional award termed an incentive award.  The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances, including the personal risk, if any, incurred by the plaintiff applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value, for example, factual expertise, any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery."  *Roberts v. Texaco*, 979 F.Supp 185, 200 (S.D.N.Y. 1997).

Mr. Erlandson says in his declaration he's employed as a consultant and customarily during the time in which he was involved in this case charged a thousand dollars an hour for his services.  He estimates he spent well over 16 hours advancing the class's interests in this case, including by working with attorneys from Robbins Geller on the lead plaintiff process, the factual investigation, the preparation

of the amended complaint, litigation strategy, assessment of damages, choosing a mediator, and conducting a mediation, negotiating the settlement terms and settlement documentation, and monitoring the actual developments.  He often did this work during hours when he could have been working instead.  This is all from his declaration.  This represents a significant amount of time and effort in this matter by Mr. Erlandson.

Mr. Norris also says he devoted significant time to monitoring the litigation and counsel's efforts on class's behalf, including by regularly communicating with his attorneys at Levi Korsinsky regarding counsel's investigation into Triterras, case strategy, plaintiffs' mediation statement, and the settlement documentation.  He's employed by the State Department and represents that his work on this case occurred in the late evenings or on weekends, this is also from his declaration, and this represents a significant amount of time and effort on his part as well.

Further, the requested service awards are within the range of reasonable awards recognized by Courts in this circuit.  *See Kindle v. Dejana*, 308 F.Supp 3d 698, 718 (E.D.N.Y. 2018), collecting cases granting $10,000 awards.  So I find the service awards to be fair and reasonable.

Turning now to attorneys' fees and costs.

Lead counsel seeks fees of $3 million and litigation expenses of $38,872.83.  Lead counsel has the discretion under

paragraph 6.2 to allocate this award among other plaintiffs' counsel.

Class counsel in a class action may be entitled to a reasonable fee. *Pantelyat v. Bank of America*, 2019 WL 402854, at *8 (S.D.N.Y. January 31, 2019).

"Whether a fee in a common fund case is reasonable may be determined using either the lodestar method in which the Court ascertains the number of hours reasonably billed to the class, multiplies those hours by a reasonable hourly rate and applies any appropriate adjustments or by setting a reasonable percentage of the recovery as a fee.  In light of the strong consensus both in this circuit and across the country, in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery, the Court applies the percentage-of-the-fund method to this case with a lodestar cross-check to confirm its reasonableness."  That's *Pantelyat* at 8.  *See also In re Merrill Lynch* at 136.

Under either method, courts evaluate the reasonableness of the resulting fee by considering the *Goldberger* factors, counsel's time and labor, the case's magnitude and complexities, the risk of continued litigation, the quality of representation, the fee's relation to the settlement, and public policy considerations.  *See Pantelyat* at *8.

Under these metrics, I find that the requested award

is fair, reasonable, and adequate.

Looking first at the *Goldberger* factors, they favor approval.  Lead counsel's attorneys, investigators, professionals, and staff spent a collective 1596.8 hours on this matter, including 1382.8 attorney hours.  See ECF number 71, paragraph 3 and Exhibit A.  Although it never got to discovery, the case required significant hours based on the matter being a complex securities class action lawsuit and the need for extensive investigation, mediation, and negotiation.

Class counsel has demonstrated high quality representation throughout the case, including in the mediation and negotiation afterwards.  *See Goldberger*, 209 F.3d at 55, which said the quality of representation is best measured by results.  Lead counsel ensured the plaintiffs' actual recovery when such a recovery would not be guaranteed had the parties not settled.

Regarding the fee's relation to the settlement, one-third is comparable to other securities class actions in this Circuit.  *See In re PPDAI*, 22 WL 198491, at *16 (E.D.N.Y. January 21, 2022); *In re Payment Card Interchange*, 991 F.Supp. 2d 437, 445 (E.D.N.Y. 2014), both of which approved 33 percent; and *In re Facebook*, 343 F.Supp. 3d at 416, noting the courts approve awards totaling well over 25 percent.  Public policy concerns favor the award of reasonable attorneys fees in class action securities litigation, because where many, if not most

class members, are individual investors, an award must be sufficient to encourage counsel to act on behalf of such investors.  *In re Merrill Lynch* 141 to 142.

I next perform a lodestar cross-check to verify the reasonableness of the fees.  I multiply the number of hours reasonably expended by the prevailing rates for such services to generate a lodestar figure and compare it to the requested fees.  The lodestar is based on prevailing market rates. *Pantelyat* at *9.

I note that lead counsel is located in Melville, New York, which is within the Eastern District, but I used rates typical for the Southern District for comparison here. *See In re Telik*, 576 F.Supp. 2d at 589, noting that Courts used the standard charge in the community where the services were performed.  Lead counsel says its lodestar is $1,158,033 for a total of just under 1597 hours.  See ECF number 71, paragraph 3, Exhibit A.  To reach that amount, counsel used hourly rates ranging from $770 to $1350 per hour for partners, $400 for an associate, $775 for a forensic accountant, $430 for an economic analyst, and $100 to $375 for paralegals, investigators, and other support staff.  See ECF number 71-1.  Some of these rates are high, but overall they are in the neighborhood of rates that have been approved in securities class actions in this district in recent years.  *See Guevoura Fund v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. December 18, 2019); *but see In re*

*PPDAI* at *16 and noting that the rates exceed those normally approved in the Eastern District.

Even if lead counsel's rates are somewhat inflated, however, the lodestar amount of $1,158,033 works out to a 2.6 multiplier, which is on the low end for this kind of case. *See Carlson v. Xerox*, 355 Fed. App'x 523, 526, which affirmed the district court's judgment in a securities fraud class action and acknowledged the district court's note that the multiplier of 3.9 was below the 3.6 average and in line with the 3.1 median for similar cases. *See also In re Graña y Montero* at *18, which had a 3.56 multiplier and held that below what has been deemed reasonable in similar cases.

In sum, I make no specific finding approving the hourly rates or the hours, and this decision should not be cited as such, but overall I find lead counsel's request for fees is fair, reasonable, and adequate. Even if I shaved the hourly rates, the multiplier would still be in the realm of the reasonable.

Lead counsel also requests reimbursement of $38,872.83 in litigation expenses incurred in connection with resolving this action. Attorneys generally are compensated for reasonable out-of-pocket expenses incurred and customarily charged to the clients that were incidental and necessary to the representation. *Sewell v. Bovis*, 2012 WL 1320124, at *14 (S.D.N.Y. April 16, 2012); *see Bekker v. Neuberger Berman*, 504

F.Supp. 3d 265, 271it's a (S.D.N.Y. 2020).  Accordingly, I grant lead counsel's request for litigation costs which they have adequately documented.

For these reasons, plaintiffs' motions are granted. I will enter the proposed orders, which are ECF numbers 76, 77 and 78.  The clerk will terminate ECF number 65.

You should see the orders, if not later today, tomorrow on the docket.

Is there anything else we should do this afternoon?

MR. PINTAR:  Not from plaintiffs, your Honor.

MS. BEST:  Not for defendants, your Honor.

THE COURT:  All right, thank you all.  Thanks for your patience sitting through that.  It does make my life a lot easier not to have to write a formal decision.

MR. PINTAR:  Thank you, your Honor.

MR. RUSSELLO:  Thank you, your Honor.

o0o